HERTZ CORPORATION *v.* FEDERAL INSURANCE COMPANY ET AL.
(SC 15846)

Callahan, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued June 2—officially released July 14, 1998

*Jon Berk*, with whom was *Claudia A. Baio*, for the appellants (named defendant et al.).

*Daniel P. Scapellati*, with whom was *James M. Celentano*, for the appellee (plaintiff).

*Opinion*

KATZ, J. The sole issue on appeal is whether the liability insurance coverage provided by the plaintiff automobile rental agency pursuant to a rental contract applies as primary coverage or as secondary coverage

attaching only after the insured's personal automobile policy issued by the defendant has been exhausted.[1] We conclude that it applies as secondary coverage.

The following facts are undisputed. On June 26, 1994, the defendant Joan B. Berkowitz rented an automobile from the plaintiff, the Hertz Corporation (Hertz). The rental agreement provided Berkowitz with minimum liability coverage of $20,000/$40,000 and offered Berkowitz an option to purchase a liability insurance supplement, which she declined.[2]

---

[1] In the context of this discussion, "[p]rimary insurance is coverage that attaches immediately upon the happening of an occurrence that is covered under the terms of the policy. . . . Excess or secondary insurance is coverage that attaches only after a predetermined amount of primary coverage has been exhausted." (Emphasis in original.) B. Ostrager & T. Newman, Handbook on Insurance Coverage Disputes, (8th Ed. 1995 ) § 6.03 [a], p. 216.

[2] There are two provisions of the rental agreement that are pertinent to this appeal. Paragraph 10 (b) of the rental agreement terms and conditions provides in capital letters as follows: "If you do not purchase liability insurance supplement (LIS) (A summary of LIS coverage is located on the back of this agreement) at the commencement of the rental and an accident results from the use of the car, your insurance and the insurance of the operator of the car will be primary. This means that Hertz will not grant any defense or indemnity protection under this paragraph if either you or the operator of the car are covered by any valid and collectible automobile liability insurance, whether primary, excess or contingent, with limits at least equal to the minimum required by the applicable state financial responsibility law. If neither you nor the operator of the car have such insurance, Hertz will grant you and any authorized operator of the car limited protection under the terms and conditions stated in subparagraph 10 (a) above and 10 (c) below."

Additionally, the Hertz rental agreement executed by Berkowitz provided: "LIS declined—Hertz liability protection is secondary." Below this portion of the rental agreement, Berkowitz initialed the following: "BY YOUR INITIALS YOU ACKNOWLEDGE AND AGREE TO THE ABOVE CONDITIONS." Immediately below Berkowitz' initials appeared the following: "By your declining the optional liability insurance supplement (LIS), paragraph 10 (b) of the rental agreement terms and conditions applies to this rental. By signing below, you accept the terms of this Agreement and you agree that any insurance that provides coverage to you or to an authorized operator shall be primary. In the event of any claims arising from the operation of this vehicle, the just-mentioned insurance shall be responsible for the payment of all personal injury and/or property damage claims up to the limits of such insurance."

While operating the Hertz rental automobile on June 27, 1994, Berkowitz collided with a vehicle owned and operated by the defendant Catherine Prentice Deutsch, who thereafter filed an action against Hertz and Berkowitz, claiming money damages for personal injuries arising out of that accident. Hertz provided reimbursement to Deutsch for the property damage she sustained as a result of the accident. When Hertz learned that Berkowitz was an insured under a personal automobile policy issued to her by the named defendant, Federal Insurance Company (Federal), it demanded that Federal acknowledge and accept primary liability obligations pursuant to that policy.[3] After Federal refused to

---

[3] The insurance policy issued by Federal to Berkowitz provides in pertinent part: "*Vehicle Liability Coverage* Rider (U-1) (1993 Revision)

"This part of your Masterpiece Policy provides you with vehicle liability coverage from a vehicle accident unless stated otherwise or an exclusion applies . . . .

"*Vehicle Liability Coverage*

"We cover damages a covered person is legally obligated to pay for bodily injury or property damage arising from the ownership, maintenance, or *use* of a motor vehicle which take place anytime during the policy period and are caused by an occurrence unless stated otherwise or an exclusion applies. . . .

"A 'covered person' means:

"* you or a family member. . . .

"A 'covered vehicle' means:

"* any vehicle named in the Coverage Summary . . . .

"* *any motor vehicle not owned by you* or a family member *when used with the owner's permission,* provided it is not furnished or available for your or a family member's regular use.

"  'Damages' means the sum that is paid or is payable to satisfy a claim settled by us or resolved by judicial procedure or by a compromise we agree to in writing. . . ." (Emphasis added.)

Federal's insurance policy further provides:

"*Policy Terms* Rider

"This part of your Masterpiece Policy explains the conditions that apply to your policy . . . .

"*Liability Conditions*

"These conditions apply to all liability coverages in this policy.

"*Other Insurance*

"Vehicles: When other liability insurance applies to covered damages, we will pay our share. Our share is the proportion that our amount of coverage

accept primary insurance coverage responsibilities for the claims asserted against Berkowitz, Hertz brought this declaratory judgment action against Federal, seeking to establish that Federal's coverage was primary. Hertz filed a motion for summary judgment declaring that Berkowitz was entitled to liability coverage under the Federal policy and that any liability coverage under Hertz' rental contract should be declared excess. Federal, in addition to a memorandum in opposition to Hertz' motion, filed a cross motion for summary judgment seeking a declaration that the coverage afforded under Hertz' rental contract rather than the coverage under its policy with Berkowitz was in fact primary. The motions for summary judgment were argued before the trial court on August 18, 1997, and, in a memorandum of decision dated October 22, 1997, the court found that Hertz' coverage was excess and, accordingly, rendered judgment in favor of Hertz. The trial court based its decision on the fact that Hertz was self-insured, as permitted by General Statutes § 38a-371, and concluded that self-insurance is not "other insurance" as that term is used in the Federal policy. See footnote 3 of this opinion.[4]

---

bears to the total of all applicable amounts of coverage. However, for non-owned motorized land vehicles, this insurance is excess over any other insurance, except that written specifically to cover excess over the amount of coverage in this policy. . . ." (Emphasis added.)

[4] Shortly after the trial court rendered judgment for Hertz in this case, we decided *Conzo* v. *Aetna Ins. Co.*, 243 Conn. 677, 686, 705 A.2d 1020 (1998), in which we held that an employee who is injured in the course of his employment while occupying a motor vehicle owned by his employer is entitled under General Statutes § 38a-336 (f) to uninsured motorist benefits from his or her self-insured employer. In that case, the city, as the self-insured employer, had conceded its insurance obligations in light of §§ 38a-370 and 38a-371, and recognized, as we stated in *Bouley* v. *Norwich*, 222 Conn. 744, 747 n.6, 610 A.2d 1245 (1992), that the insurance mandates of General Statutes §§ 38a-334 through 38a-336a apply to self-insurers. In deciding in *Conzo* that the funding mechanism by which an owner of vehicles decides to meet the requirements of Connecticut insurance law is irrelevant to the obligation of that funding entity to comply with such requirements, we recognized that self-insurance is the functional equivalent of commercial insurance.

On November 7, 1997, Federal appealed to the Appellate Court from the trial court's judgment.[5] We transferred the appeal to this court pursuant to General Statutes § 51-199 and Practice Book § 4023, now Practice Book (1998 Rev.) § 65-1. The sole issue on appeal

We further make note of General Statutes § 38a-363 (b) ("self-insurer" within definition of insurer) and § 38a-371 (c) (3) (self-insurer to provide payments for all liabilities covered by residual liability insurance and all other obligations imposed by said sections "substantially equivalent to those afforded by a policy of insurance that would comply with this section"). These statutory provisions explicitly reflect the legislature's intent to create a uniform scheme of insurance protection notwithstanding the source of that protection. That is, irrespective of whether the protection is provided by a program of commercial insurance or self-insurance, within the context of the mandatory insurance schemes, we can discern no distinction based upon the means of funding those benefits. Therefore, we disagree with the trial court's reasoning, and decide the issue before us based upon the language of the contract as it converges with other applicable insurance contracts. *Aetna Casualty & Surety Co.* v. *CNA Ins. Co.*, 221 Conn. 779, 786, 787 n.6, 606 A.2d 990 (1992) (decision as to priority of coverage is based upon "plain language" of contracts).

[5] Thereafter, the parties entered into what they inaptly titled a "Stipulated Judgment," which provided that Hertz is entitled to the following declaratory relief: "a. That any liability protection afforded the defendant Berkowitz under the Hertz rental contract is excess to the liability coverage afforded to the defendant Berkowitz under the policy issued by the defendant Federal;

"b. That the defendant Federal is obligated to reimburse the plaintiff for payments made by the plaintiff for property damage to the defendant Deutsch's vehicle; and

"c. That the defendant Federal is obligated to primarily defend and indemnify Berkowitz for any claims arising out of the June 27, 1994 accident

"4. The plaintiff, The Hertz Corporation, is entitled to reimbursement from the defendant, Federal Insurance Company, in the following amounts:

"a. $3,241.04 which is the amount paid by the plaintiff for property damage to the vehicle of Catherine Prentice Deutsch;

"b. $847.66 which is the amount paid by the plaintiff for the rental of a substitute vehicle for Catherine Prentice Deutsch; and,

"c. $10,000.00 which is the amount contributed by the plaintiff for the settlement of the underlying State Court Action pending in the Judicial District of Fairfield which was brought by Catherine Prentice Deutsch."

Although this document appears on its face to resolve the issue raised in this appeal, it is obvious from the timing of its execution that the parties merely intended to specify the dollar amounts that would flow from the trial court's declaratory judgment of the rights and obligations of the parties if that judgment were to be affirmed on appeal. Furthermore, although at first blush, this case resembles the rendering of summary judgment as to

is whether the liability protection afforded under the Hertz contract is excess to the insurance coverage provided by Federal.[6] Although for reasons different from those articulated by the trial court, we affirm the judgment.

We begin our discussion with some fundamental legal principles. The first pertains to the standard of review of the trial court's decision rendering summary judgment. The second pertains to the manner in which the terms of an insurance contract are to be construed.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 [now Practice

liability only, which is not an appealable final judgment; *Pinnix* v. *LaMorte*, 182 Conn. 342, 344, 438 A.2d 1102 (1980); this case is a declaratory judgment action in which the parties sought only a declaration of the rights and obligations of the parties under their contracts and the applicable law. Neither Hertz in its complaint or its motion for summary judgment nor Federal in its cross motion for summary judgment sought money damages. Therefore, the trial court's judgment was final for purposes of the declaratory judgment action, and the parties' gratuitous, postjudgment statement of the dollar amount that would be entailed were we to affirm the trial court's declaratory judgment did not strip it of its finality.

[6] The issue of whether Hertz is *obligated* to provide liability coverage to the renters of its automobiles pursuant to § 38a-334-5 (c) (11) (B) (ii) of the Regulations of Connecticut State Agencies was touched upon by Hertz in its memoranda in support of its motion for summary judgment and at oral argument. Essentially, notwithstanding its independent legal obligations pursuant to General Statutes § 14-154a (imposing direct indemnification obligations upon owner of rental vehicle), Hertz suggested that, pursuant to the regulation, it is not required to provide its renters with liability coverage. Therefore, according to Hertz, it is free to provide its renters with coverage only on a secondary basis. In the absence of any claim that such an exclusion was present in the Hertz contract, the propriety of that regulation, as well as Hertz' ensuing position, is not, however, an issue that must be decided by the court in this case. As Federal points out in its brief, "[s]ince Hertz has not chosen to exclude coverage to the renter, but merely sought secondary status, no argument is addressed, or need[s] to be addressed, whether this regulatory exclusion is valid in that it is contrary to the mandate that the owners of cars provide coverage for permissive users." In this case, Hertz agreed to provide liability coverage as secondary to any coverage that might apply under Berkowitz' personal automobile liability policy.

Book (1998 Rev.) § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381 [now Practice Book (1998 Rev.) § 17-46]. . . . *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994)." (Internal quotation marks omitted.) *Doty* v. *Mucci*, 238 Conn. 800, 805–806, 679 A.2d 945 (1996).

The standard of review of the terms of an insurance contract is also well settled. "Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction. See, e.g., *Weingarten* v. *Allstate Ins. Co.*, 169 Conn. 502, 509–10, 363 A.2d 1055 [(1975), overruled in part on other grounds, *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 593 A.2d 498 (1991)]; *A. M. Larson Co.* v. *Lawlor Ins. Agency, Inc.*, 153 Conn. 618, 622, 220 A.2d 32 [1966]. The determinative question is the intent of the parties, that is, what coverage the . . . [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy. *Marcolini* v. *Allstate Ins. Co.*, 160 Conn. 280, 283, 278 A.2d 796 [1971]. If the terms of the policy are clear

and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. *Weingarten* v. *Allstate Ins. Co.*, supra, 509. However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. *Raffel* v. *Travelers Indemnity Co.*, 141 Conn. 389, 392, 106 A.2d 716 [1954]; see also 4 [S.] Williston, Contracts (3d Ed. [1961]) § 621. . . . *Griswold* v. *Union Labor Life Ins. Co.*, 186 Conn. 507, 512–13, 442 A.2d 920 (1982); see *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 583–84, 573 A.2d 699 (1990)." (Internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 769, 653 A.2d 122 (1995).

Applying these principles to the facts of this case, we conclude that the Federal policy provides primary coverage. We begin with the Federal policy, which, in relation to other insurance, provides that "[w]hen other liability insurance applies to covered damages, we will pay our share . . . [which] is the proportion that our amount of coverage bears to the total of all applicable amounts of coverage. However, for non-owned motorized land vehicles, *this insurance is excess over any other insurance, except that written specifically to cover excess over the amount of coverage in this policy.*" (Emphasis added.) Therefore, if there is other insurance written specifically to cover excess coverage, Federal will provide primary coverage.

In executing the rental agreement, Berkowitz expressly declined the liability insurance supplement offered by Hertz and explicitly agreed that Hertz' insurance would be secondary. The rental agreement executed by Berkowitz provided: "[Liability insurance supplement] declined—Hertz liability protection is secondary." As evidenced by her initials, Berkowitz

acknowledged and accepted the terms of the rental agreement that any insurance providing coverage to her or to an authorized operator would be primary up to the limits of such insurance. As further evidenced by her signature, Berkowitz agreed to the following terms and conditions, which were printed in capital letters in the rental agreement: "If you do not purchase liability insurance supplement . . . *your insurance and the insurance of the operator of the car will be primary.* This means that Hertz will not grant any defense or indemnity protection under this paragraph *if either you or the operator of the car are covered by any valid and collectible automobile insurance, whether primary, excess or contingent,* with limits at least equal to the minimum required by the applicable state financial responsibility law." (Emphasis added.) Hertz' liability protection, therefore, was provided expressly as secondary protection, written specifically to cover liability in excess of the coverage provided by Berkowitz' personal automobile policy—in this case, the Federal policy.

Federal argues that Berkowitz could not contract unilaterally with Hertz to shift primary liability coverage and bind Federal as her primary insurer. See *State Farm Mutual Automobile Ins. Co.* v. *Enterprise Leasing Co.*, 452 Mich. 25, 35–36, 549 N.W.2d 345 (1996). More specifically, Federal asserts that by signing the rental agreement, Berkowitz unilaterally shifted the prioritization of liability coverage from Hertz to Federal. This argument mischaracterizes the operative policies. The rental agreement does not provide that Federal's coverage must be primary. Rather, it is by virtue of Federal's *own* policy language that its coverage is primary with respect to policies, such as that provided by Hertz, which are written specifically to provide excess liability coverage. Indeed, as Hertz points out in its brief, this is no different than if Berkowitz had elected to purchase

an umbrella policy from an entity other than Federal that specifically provided that its coverage would be excess for nonowned vehicles. In such a case, primary coverage would fall on Federal. Moreover, Berkowitz had the option of procuring primary insurance coverage from Hertz for an additional charge. By declining that coverage, she implicitly chose instead to rely on the policy issued by Federal, specifically, the language of the "other insurance" clause, which expressly provides that the insured may shift primary coverage to Federal. Therefore, Berkowitz and Hertz did not attempt impermissibly to alter unilaterally Federal's obligation.

Federal argues that its policy, which states that the coverage provided is excess except with respect to other insurance "written specifically to cover excess over the amount of coverage in *this policy*," (emphasis added) must be interpreted to mean that only "other insurance" that has been specifically written with reference to the coverage provided *by Federal* will render Federal's policy primary. In other words, Federal asserts that, even assuming that the Hertz contract provides only excess insurance, that contract was not written with reference to Federal's policy and, therefore, cannot convert Federal's coverage to primary status. Because we interpret that language to mean that Federal's policy will be primary with respect to other insurance that is written specifically to be excess, although not necessarily excess over the coverage provided by Federal, it is evident that we disagree.

Furthermore, to the extent that this language is susceptible of the alternative interpretation advanced by Federal, it is, at best, ambiguous. It follows that even if we were inclined to find the "other insurance" clause contained in the Federal policy to be ambiguous because it is not clear what the policy envisions when it refers to "other insurance . . . written specifically to cover excess over the amount of coverage in this

policy," we would nevertheless construe the language against Federal. *O'Brien* v. *United States Fidelity & Guaranty Co.*, 235 Conn. 837, 843, 669 A.2d 1221 (1996) (ambiguity in insurance provision to be construed in favor of insured and against drafter); *Stephan* v. *Pennsylvania General Ins. Co.*, 224 Conn. 758, 763, 621 A.2d 258 (1993) (same). Construing the Federal policy's "other insurance" provision in a manner most favorable to Berkowitz and against Federal requires a finding that the Hertz liability protection was written specifically as excess to the Federal coverage. Accordingly, Federal's theory affords it no success.[7]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[7] Federal argues that the Hertz agreement "simply states [that] the lessee agrees that any insurance she has will be primary" and that this clause is "not an 'other insurance' clause at all." If the rental agreement had no other pertinent provisions, Federal's claim that the Hertz agreement was ambiguous would be more compelling. The rental agreement specifically stated, however, that "Hertz liability protection is secondary."