[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
The plaintiffs, Robert J. Petisi and Marketing Corporation of America (MCA), tiled a one-count declaratory action against the defendants, Strottman International, Inc. (Strottman) and Dryden Petisi Promotions, LLC (D P). The plaintiffs allege that in February of 1995, Strottman, Petisi and Thomas Dryden formed D 
P to engage in sales promotion, and entered into an Operating Agreement. Petisi also entered into an Employment Agreement with D P in January of 1995. Under the Operating Agreement, if either Petisi or Dryden voluntarily terminated their employment with D P, then D P had the option of purchasing their interest (units) in D P within one hundred eighty days. The Employment Agreement further provided that upon selling his units to D P after voluntary termination, the departing member would be required to sign a covenant not to compete with D P. Upon terminating his employment with D P in 1997, Petisi surrendered his units to the defendants at no cost, and then entered into business with MCA. The plaintiffs believe that Petisi is not subject to any restriction on his ability to pursue a career at MCA. The plaintiffs seek (1) a declaration that "having tendered his Units to Strottman and D P at no cost, Petisi is free under the terms of the Agreement to pursue his career with MCA without restriction; or (2) an alternative declaration that if there is to be any sale of Petisi's Units, such sale cannot take place until after December 31, 1997, the close of D P's fiscal year; and (3) an alternative declaration that any covenant not to compete, if imposed upon Petisi as a condition of the sale of Petisi's Units, is (a) void under applicable law and/or (b) unenforceable in the State of Connecticut as against public policy."
The defendants filed an answer denying the material CT Page 1847 allegations of the complaint. They also filed counterclaims in which they allege that: (1) Petisi breached the Employment Agreement by going to work for MCA; (2) Petisi breached the Operating Agreement by going to work for MCA, (3) Petisi breached the implied covenant of good faith and fair dealing; (4) Petisi breached his fiduciary duties; (5) MCA tortiously interfered with D P's business; and (6) Petisi's actions constitute a violation of the Connecticut Unfair Trade Practices Act (CUTPA). As a result, the defendants seek: (1) a declaratory judgment providing that Petisi is bound by § 7 of the Employment Agreement and § 16.14 of the Operating Agreement; and (2) an accounting from MCA.
The plaintiffs have filed a partial motion for summary judgment (#119) seeking a declaratory ruling that Petisi is free under the terms of his contractual agreements with the defendants to pursue his career with MCA without restriction or, in the alternative, a declaration that any covenant not to compete, if imposed upon Petisi in the circumstances of this case, would be unenforceable as a matter of law. The plaintiffs seek a similar declaration with respect to the defendants' counterclaims asserting post-employment restrictions on Petisi.
The defendants filed an objection to the motion for summary judgment and a cross-motion (#143) for summary judgment, arguing that there are genuine issues of material fact in dispute, or in the alternative, that if there are no genuine issues of material fact, that summary judgment should enter in favor of the defendants.
"Practice Book (1998 Rev.) § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Hertz Corp. v. Federal Ins. Co.,245 Conn. 374, 380-81, ___ A.2d ___ (1998). CT Page 1848
The plaintiffs argue that nothing in the Operating Agreement requires a departing member of D P to sell his units to D P where he has already tendered them at no cost. The plaintiffs contend that because Petisi surrendered his units at no cost, rather than selling them back to D P, the clause in the Operating Agreement requiring the execution of a non-competition agreement was rendered moot. The plaintiffs argue that the Operating Agreement contemplates a restriction on competition only in the limited circumstances where D P or a D P member purchases a departing member's units for value. They claim that the language of the Operating Agreement requires only that Petisi could not leave D P and keep his units if D P wanted them, and that a departing member who surrenders his units cannot thereafter be required to accept compensation for the units, thus triggering the non-competition provision. The plaintiffs further argue that if the defendants are correct that the Operating Agreement can be construed as requiring Petisi to "sell" his surrendered units and execute a non-competition agreement against his will, it is void under California law[2] and violative of Connecticut public policy. The plaintiffs also argue that California has an overriding public policy against non-competition agreements, which renders void any requirement under the Operating Agreement that a departing member, as a penalty for voluntary withdrawal, sign a non-competition agreement in connection with a forced "sale" of his units. The plaintiffs argue that the circumstances here do not fall into any statutory exception to the general California policy. In addition, the plaintiffs argue, although the parties' agreements are to be interpreted under California law, the non-competition agreement here is also violative of Connecticut public policy. The plaintiffs contend that the defendants cannot wait for over a year from the date Petisi surrendered his units to D P, then choose to conduct an appraisal and buy his interest in the units, thereby forcing him to resign from his current position with MCA and prevent him from seeking employment in a related field anywhere in the United States.
The defendants argue that there exists a mixed factual and legal question concerning whether Petisi may properly conclude that he can willfully disregard the appraisal, tender and sales provisions found in the Operating Agreement. The defendants contend that the plaintiffs' position that Petisi could unilaterally surrender his units and avoid the appraisal requirements, thereby rendering moot any issue relating to the CT Page 1849 non-competition agreement, is faulty. The defendants argue that any ambiguous or internally inconsistent contract provisions present questions of fact. The defendants further assert that the parties' arguments turn on their intent in placing the appraisal and non-competition clauses in the Operating Agreement. The defendants also argue in support of their cross-motion, however, that the words used in the Operating Agreement are crystal clear and do not present any issues of fact. In addition, the defendants argue that the non-competition provision under the Operating Agreement is not unenforceable under either California or Connecticut law. Finally, the defendants argue that the special defense of unclean hands raised in their answer raises issues to be resolved by a fact finder.
"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties . . . The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." (Citations omitted.) Morey v.Vannucci, 75 Cal.Rptr.2d 573, 578 (Cal.App. 1 Dist. 1998). "Where the meaning of the words used in a contract is disputed, the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning." Id. "Where the interpretation of contractual language turns on a question of the credibility of conflicting extrinsic evidence, interpretation of the language is not solely a judicial function. . . . As trier of fact, it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract." Id., 579.
The parties in essence dispute the meaning and effect of § 16.5(d)[3] and § 16.14[4] of the Operating Agreement, and have submitted the following parol evidence, which raises questions concerning the clarity of those sections of the Operating Agreement. The plaintiffs have offered a letter drafted by their attorney sent to the defendants attorney in support of the motion for summary judgment. The letter states that Petisi did not believe that his units would have any positive value, and therefore no appraisal under § 16.5(d) was required. Also offered is a letter from the defendants' attorney indicating that CT Page 1850 Petisi's units did have a positive value and therefore the defendants intended to exercise their might pursuant to § 16.5(d) to have the units appraised, which would trigger the non-competition clause in § 16.14. When asked where the Operating Agreement stated a member could unilaterally tender back units without an appraisal, Petisi responded that that was his interpretation of § 16.5(d), since, in his opinion, D P had a zero value at the time he resigned. Thomas Dryden, Petisi's name partner at D P, avers that Petisi had no right to surrender his membership interest by unilaterally declaring a zero value for his units, and that no such interpretation of the Operating Agreement was contemplated when it was drafted. This interpretation is also subscribed to by Kenneth Strottman, who was a 50% owner of D P.
"When parol evidence is introduced in aid of the interpretation of uncertain or doubtful language in the contract, the question of the meaning or intent of the parties is one of fact. If the meaning or intent is to be determined one way according to one view of the facts and another way according to another view, the determination of the disputed matter must be left to the jury." Horsemen'sBenevolent Protective Association v. Valley Racing Association,4 Cal.App.4th 1538, 6 Cal.Rptr.2d 698, 710 (1992).
The parties are at fundamental odds over the meaning and effect of § 16.5(d) of the Operating Agreement, which governs the applicability of § 16.14. This conflict raises genuine issues of material fact, such as whether D P units had any value when Petisi left to work for MCA, and the intention of the parties in including the appraisal and sale language in the Operating Agreement.
Accordingly, the plaintiffs' motion for summary judgment is denied. The defendants' cross-motion for summary judgment is also denied.[5]
So Ordered.
Lewis, J.