FARMERS TEXAS COUNTY MUTUAL *v.* HERTZ
CORPORATION
(SC 17643)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued February 9—officially released May 22, 2007

*Steven M. O'Connor*, for the appellant (plaintiff).

*Thomas Anderson*, with whom, on the brief, was *Joseph Mascaro*, for the appellee (defendant).

*Cesar A. Noble* filed a brief for the Car and Truck Rental Leasing Association as amicus curiae.

*Opinion*

KATZ, J. This appeal, arising out of two consolidated declaratory judgment actions, involves a dispute between a car rental company, Hertz Corporation (Hertz), and an insurance provider, Farmers Texas County Mutual (Farmers), as to which company had the primary obligation to provide automobile liability coverage when an individual with personal automobile

insurance from Farmers was involved in an accident while driving a car rented from Hertz.[1] Farmers appeals from the judgment of the trial court, which concluded that Hertz could, and in fact did, contractually establish that its obligation was secondary to that of Farmers. We conclude that Farmers' coverage is primary, and, accordingly, affirm the judgment of the trial court.

The following facts are undisputed. Mariano Nasser and Vijay Sharma each rented a vehicle from Hertz. Both men signed Hertz rental agreements in which they declined to purchase Hertz' liability insurance supplement.[2] In so declining, they agreed, pursuant to the terms of the rental agreement, that their personal insurance would be primary. Sharma and Nasser then were involved in separate traffic accidents with third parties on May 20, 2001, and on February 21, 2002, respectively, while driving the vehicles they had rented. In both cases,

---

[1] In the first action, Farmers filed an action for declaratory judgment against Hertz seeking a determination of liability arising from an accident involving one of Hertz' car rentals. In the second action, Hertz filed a declaratory judgment against Farmers Insurance Company, an affiliate of Farmers, seeking a determination of liability arising from a different accident involving a Hertz rental car. We therefore refer to the parties by name, rather than by party designation.

[2] Two provisions of the rental agreement are relevant to this appeal. Paragraph 10 (b) of the agreement provides, in capital letters: "If you do not purchase liability insurance supplement . . . (a summary of [liability insurance supplement] coverage appears below) at the commencement of the rental and an accident results from the use of the car, your insurance and the insurance of the operator of the car will be primary. This means that Hertz will not grant any defense or indemnity protection under this paragraph if either you or the operator of the car are covered by any valid and collectible automobile liability insurance, whether primary, excess or contingent, with limits at least equal to the minimum required by the applicable state financial responsibility law. If neither you nor the operator of the car have such insurance, Hertz will grant you and any authorized operator of the car limited protection under the terms and conditions stated in subparagraphs 10 (a) above and 10 (c)."

In addition, the first page of the rental agreement reads, also in capital letters: "[Liability insurance supplement] declined—Hertz liability protection is secondary."

the third parties involved in the accidents filed actions against Hertz and Sharma and Nasser, respectively, to recover damages for the injuries the third parties had sustained. At the time of the accidents, Nasser was covered by a personal insurance policy issued by Farmers,[3] and Sharma was covered by a personal insurance policy issued by an affiliate of Farmers, Farmers Insurance Company.[4] Farmers filed a declaratory judgment

[3] The insurance policy issued by Farmers to Nasser provides in relevant part: "AGREEMENT

"In return for payment of the premium and subject to all the terms of this policy we agree with you as follows . . .

"A. Throughout this policy, 'you' and 'your' refer to:

"1. The 'named insured' shown in the Declarations . . .

"G. 'Your covered auto' means . . .

"4. Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its

"a. breakdown;

"b. repair;

"c. servicing;

"d. loss; or

"e. destruction. . . .

"PART A—LIABILITY COVERAGE

"Insuring Agreement

"A. We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. Property damage includes loss of use of the damaged property. Damages include prejudgment interest awarded against the covered person. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

"B. 'Covered person' as used in this [p]art means:

"1. You or any family member . . . .

* * *

"Other Insurance

"If there is other applicable insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any liability insurance we provide to a covered person for the maintenance or use of a vehicle you do not own shall be excess over any other applicable liability insurance. . . ."

[4] Because Farmers Texas County Mutual and Farmers Insurance Company are affiliates, the parties refer to them collectively as Farmers. We likewise refer to them as Farmers hereinafter.

action against Hertz in the case arising out of Nasser's accident, and Hertz filed a declaratory judgment action against Farmers in the case arising out of Sharma's accident. Because of the factual similarity of the cases, the trial court consolidated the actions. Subsequently, Hertz and Farmers each filed motions for summary judgment claiming that the other should be deemed primarily responsible for liability coverage for the accidents. The court denied the motions for summary judgment on the basis of its determination that material issues of fact remained, specifically, those pertaining to Hertz' self-insurance filing and the representations contained therein regarding minimum liability coverage on its rental vehicles. The court then concluded that a trial was necessary to determine the "legal impact" of the self-insurance filings and state statutes and regulations.

After a trial to the court, the court rendered judgments in the consolidated cases in favor of Hertz, finding that, under the terms of the Hertz rental agreement and Farmers' insurance policies, and in accordance with the decision of this court in *Hertz Corp.* v. *Federal Ins. Co.*, 245 Conn. 374, 713 A.2d 820 (1998), the liability coverage provided by Farmers was primary and the coverage provided by Hertz was secondary. The court determined that, by declining to purchase the liability insurance supplement from Hertz, the renters had agreed that their valid and collectible liability coverage from Farmers would be primary for any accident involv-

---

For the purposes of the present analysis, the terms of Sharma's policy do not differ meaningfully from those contained in Nasser's policy with Farmers. With respect to other insurance, Sharma's policy provides in relevant part: "If there is other applicable automobile medical insurance on any other policy that applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

"Any insurance we provide to any insured person for a substitute or non-owned motor vehicle or trailer, shall be excess over any other collectible insurance. . . ."

ing the vehicles they had rented from Hertz. The court further concluded that this interpretation conformed to the Farmers' policies because, according to their terms, the coverage Farmers provided for vehicles not owned by the insured was excess only to other applicable liability insurance, which the renters in this case had declined to purchase.

Farmers appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.[5] There are two related issues on appeal. The first is whether, under our statutory and regulatory scheme, Hertz is required to provide *primary* liability coverage on its rented vehicles. If we answer this question in the negative, we then must determine whether the trial court properly considered the Hertz rental agreement in determining the priority of coverage as between Hertz and Farmers in the present case.

Farmers claims that the statutory scheme mandates that Hertz, as owner of the vehicle, is "expressly and exclusively" responsible for providing liability coverage, and that the trial court improperly determined that Hertz was under no such obligation. Farmers further contends that the trial court improperly relied on Hertz' rental agreement to determine the order of coverage, rather than on Hertz' self-insurance filing with the state. Hertz responds that the trial court properly determined that it was not statutorily obligated to provide primary

---

[5] The parties have informed this court that, while this appeal was pending, they settled the dispute involving the claim arising out of Sharma's accident, thus rendering that claim, which was the subject of the second action, moot for the purposes of this appeal. Therefore, we consider only those facts surrounding the claim arising out of Nasser's accident. We note, however, that because the insurance policies and rental agreements involved in each case are virtually identical, this development does not impact our determination in any significant manner.

liability coverage on its rented vehicles and that, pursuant to its rental agreement, Hertz' coverage was secondary to that provided by Nasser's insurance policy with Farmers. We agree with Hertz.

I

We turn first to Farmers' contention that Hertz is obligated by our statutory and regulatory scheme to provide primary liability coverage on its rented vehicles. We begin with the standard of review and the applicable legal principles guiding our analysis. "Because the interpretation of . . . [statutes and] regulations presents a question of law, our review is plenary." (Internal quotation marks omitted.) *Jewett City Savings Bank* v. *Franklin*, 280 Conn. 274, 278, 907 A.2d 67 (2006). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citation omitted; internal quotation marks omitted.) *Kinsey* v. *Pacific Employers Ins. Co.*, 277 Conn. 398, 405, 891 A.2d 959 (2006). With these principles in mind, we review the applicable statutes

and regulations governing Connecticut's motor vehicle liability insurance scheme.

Our statutory and regulatory scheme guarantees coverage for legal liability incurred in the use of motor vehicles and allocates the responsibility for that coverage to the owner of the vehicle. General Statutes § 38a-371 describes the mandatory security requirements for the vehicle owner under the state's no-fault motor vehicle insurance scheme. That section provides in relevant part that "[t]he owner of a private passenger motor vehicle required to be registered in this state shall provide and continuously maintain throughout the registration period security in accordance with sections 38a-334 to 38a-343, inclusive [setting forth, inter alia, minimum insurance policy coverage mandated in conformity with regulatory requirements]." General Statutes § 38a-371 (a) (1). To ensure that a vehicle owner complies with security requirements, General Statutes § 14-12b[6] prohibits the registration of a vehicle absent proof of the owner's requisite coverage, and § 38a-371 (e)[7] ensures

---

[6] General Statutes § 14-12b provides in relevant part: "(a) No motor vehicle registration shall be issued by the commissioner [of motor vehicles] for any private passenger motor vehicle . . . unless (1) the application for registration is accompanied by a current automobile insurance identification card or a copy of a current insurance policy or endorsement issued by a company licensed to issue such insurance in this state or an approved self-insurer . . . verifying that the applicant has the required security coverage, and (2) the applicant signs and files with the commissioner, under penalty of false statement . . . a statement . . . that the owner of the vehicle has provided and will continuously maintain throughout the registration period the minimum security required by section 38a-371. . . .

"(c) A person presenting an insurance identification card to the commissioner or to a law enforcement officer is deemed to have full knowledge and understanding that presentation of the card means the owner of the vehicle so registered has provided and will continuously maintain throughout the registration period the minimum security required by section 38a-371. . . ."

[7] General Statutes § 38a-371 (e) provides: "An owner of a private passenger motor vehicle with respect to which security is required who fails to have such security in effect at the time of an accident shall have all of the rights and obligations of an insurer under sections 38a-363 to 38a-388, inclusive,

that, even if the owner allows insurance coverage to lapse on a vehicle, the owner will still be liable for damages in the event of an accident.

Other statutes dictate that an owner is not relieved of liability simply because the owner is not the operator of the vehicle. General Statutes § 14-213b[8] proscribes operation of an uninsured vehicle, and places responsibility for adherence to that rule on the owner, even when the owner is not the operator of the vehicle. In addition, General Statutes § 14-154a addresses owners who rent or lease their vehicles, providing in relevant part: "(a) Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner. . . ."

The legislature, therefore, has made clear, through its use of mandatory language and mutually reinforcing statutes, that, as a general matter, the owner of a vehicle registered in Connecticut is responsible for maintaining liability insurance on that vehicle.[9] Pursuant to General

and shall remain subject to all the obligations of the Financial Responsibility Law, sections 14-112 to 14-133, inclusive."

[8] General Statutes § 14-213b (a) provides in relevant part: "No owner of any private passenger motor vehicle . . . registered or required to be registered in this state may operate or permit the operation of such vehicle without the security required by section 38a-371 or with security insufficient to meet the minimum requirements of said section . . . ."

[9] We note additionally that the insurance commissioner is mandated by General Statutes § 38a-334 to adopt regulations prescribing the minimum provisions that those policies are required to contain. Pursuant to this directive, the insurance commissioner has promulgated §§ 38a-334-1 through 38a-334-10 of the Regulations of Connecticut State Agencies. In the present case, the parties dispute the import of § 38a-334-5, which describes the minimum provisions for personal injury and property damage liability. Farmers points to subsection (d) of that provision, which provides in relevant part: "[t]he insurance afforded shall apply for the benefit of the named insured and any other person or organization using the motor vehicle within the scope of his permission from the named insured . . . ." Regs., Conn. State Agencies § 38a-334-5 (d). This provision, Farmers contends, mandates that Hertz' self-

Statutes §§ 38a-371 (c) and 14-129, Hertz elected to pro-

insurance must cover Nasser, a permissive user of its vehicle. In light of our conclusion that, although Hertz must provide liability insurance coverage on its vehicles, that coverage need not be primary, this claim is not dispositive of the issues in the present case.

Hertz, on the other hand, points to subsection (c) (11) (B) (ii) of § 38a-334-5, which provides in relevant part: "Exclusions. The insurer's obligation to pay and defend may be made inapplicable . . . to bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of any . . . motor vehicle . . . while rented to others by the named insured . . . ." Hertz claims that this provision "exempts Hertz, as a renter, from providing liability protection to cover bodily injury or property damage arising out of the rental and use of its motor vehicles," and that, because Hertz would be permitted under this regulation to decline to provide *any* coverage, the regulation also supports its right to provide only secondary coverage under the terms of its rental agreement.

In support of Hertz' position, the amicus curiae, Car and Truck Rental Leasing Association, addresses the question we raised, but did not answer in *Hertz Corp.* v. *Federal Ins. Co.*, supra, 245 Conn. 380 n.6, of whether this regulatory exclusion would be valid under Hertz' construction because it may conflict with the mandate under our insurance scheme that vehicle owners must provide coverage for permissive users of their vehicles. The amicus contends that § 14-154a, which imposes direct indemnification obligations on owners of rental vehicles, reinforces the validity of Hertz' construction of the exemption in § 38a-334-5 (c) (11) (B) (ii) because § 14-154a otherwise affords the public redress against the owner of a rental vehicle, and, therefore, the regulatory exception, when viewed in the context of the entire scheme, can be given effect consistent with the public policy of providing minimum amounts of recovery for individuals harmed by a motor vehicle. In fact, the amicus contends, § 14-154a provides even greater protection than minimum liability insurance coverage for an injured party because the owner of a rented vehicle could be found vicariously liable for additional punitive damages at common law. The amicus also notes, however, that this reasoning is effectively defeated by 49 U.S.C. § 30106, which became effective for actions commencing after the date of its enactment on August 10, 2005 (and therefore does not apply to the present case), and preemptively eliminated the vicarious liability imposed by § 14-154a.

Just as we did not need to reach the question of the validity of § 38a-334-5 (c) (11) (B) (ii) under the facts of *Hertz Corp.* v. *Federal Ins. Co.*, supra, 245 Conn. 380 n.6, based on our conclusion in part I of this opinion that the statutory scheme does not require that Hertz provide primary coverage on its rented vehicles, and because Hertz did in fact maintain liability coverage on Nasser's vehicle, this case likewise does not invoke the terms of the exemption in § 38a-334-5 (c) (11) (B) (ii). Thus, the resolution of this case does not require any further analysis of the exclusion in § 38a-334-5 (c) (11) (B) (ii).

vide that security through self-insurance.[10] This court has determined that "the funding mechanism by which an owner of vehicles decides to meet the requirements of Connecticut insurance law is irrelevant to the obligation of that funding entity to comply with such requirements, [and] that self-insurance is the functional equivalent of commercial insurance." *Hertz Corp.* v. *Federal Ins. Co.*, supra, 245 Conn. 378 n.4. Thus, in choosing and being approved for self-insurance, Hertz has demonstrated that, in accordance with General Statutes § 38a-335,[11] it independently maintains funds suffi-

---

[10] General Statutes § 38a-371 (c) provides in relevant part: "Subject to approval of the Insurance Commissioner the security required by this section, may be provided by self-insurance by filing with the commissioner in satisfactory form: (1) A continuing undertaking by the owner or other appropriate person to perform all obligations imposed by this section; (2) evidence that appropriate provision exists for the prompt and efficient administration of all claims, benefits, and obligations provided by this section; and (3) evidence that reliable financial arrangements, deposits or commitments exist providing assurance for payment of all obligations imposed by this section substantially equivalent to those afforded by a policy of insurance that would comply with this section. A person who provides security under this subsection is a self-insurer. . . ."

General Statutes § 14-129, outlining the self-insurance requirements under the state's motor vehicle laws, provides in relevant part: "(a) Any person in whose name more than twenty-five motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the commissioner as provided in subsection (b) of this section.

"(b) The commissioner may, in his discretion, upon the application of such person, issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person. . . ."

[11] General Statutes § 38a-335 provides in relevant part: "(a) Each automobile liability insurance policy shall provide insurance in accordance with the regulations adopted pursuant to section 38a-334 against loss resulting from the liability imposed by law, with limits not less than those specified in subsection (a) of section 14-112, for damages because of bodily injury or death of any person and injury to or destruction of property arising out of the ownership, maintenance or use of a specific motor vehicle or motor vehicles within any state, territory, or possession of the United States of America or Canada.

"(b) Each automobile liability insurance policy issued, renewed, amended or endorsed on or after October 1, 1988, and covering a private passenger motor vehicle as defined in subsection (e) of section 38a-363, shall contain

cient to insure the minimum liability coverage imposed by Connecticut law on its vehicles. Additionally, pursuant to General Statutes § 14-15, Hertz was required to procure a license to engage in the business of renting its vehicles and, as a part of the licensing process, to submit a sworn application to the commissioner of motor vehicles that included, inter alia, "proof of financial responsibility satisfactory to the commissioner, as provided by section 14-112 or 14-129 . . . ." General Statutes § 14-15 (a). Thus, there is no doubt that Hertz complied with the applicable requirements and maintained liability coverage on the vehicle that Nasser had rented.[12]

We discern no provision in the statutes discussed previously, however, expressly mandating that Hertz, as the owner of the vehicle involved in the accident, has the *primary* obligation to provide liability coverage for any damages incurred in the use of its vehicle. We do not construe the legislature's requirement that vehicle owners maintain liability coverage as requiring that such owner coverage be primary if other coverage that satisfies the statutory minimum standards is available. It is well settled that "we decline to engraft additional

or have attached thereto a conspicuous statement specifying whether the policy provides liability, collision or comprehensive coverage for damage to a rented private passenger motor vehicle and, where the policy provides such coverage, the limit of coverage provided and whether any deductible amount applies. . . ."

[12] The parties do not dispute this fact. In its appendix to the brief filed with this court, Farmers submitted copies of the various filings comprising Hertz' self-insurance policy. Included in these documents is a letter from the Connecticut insurance commissioner informing Hertz that it had been approved as a self-insurer from the period of February 1, 2002, through February 1, 2003, during which time Nasser's accident occurred. In addition, as we previously have discussed, Hertz was required to file, as part of its self-insurance application, a financial responsibility bond demonstrating that it maintains resources sufficient to cover the minimum liability on its rental vehicles in the state of Connecticut. From the documents submitted by Farmers, it appears that Hertz indicated that it would provide the minimum coverage required by law under its self-insurance policy.

requirements onto clear statutory language. . . . [I]n
the absence of any indication of the legislature's intent
concerning this issue, we cannot engraft language onto
the statute . . . ." (Citation omitted; internal quotation
marks omitted.) *Dinan* v. *Marchand*, 279 Conn. 558,
577, 903 A.2d 201 (2006). Stated conversely, the legisla-
ture has not prohibited an owner who has complied with
its obligations to maintain coverage from contracting to
assume secondary liability if another party is available
to assume primary coverage.

In fact, under § 38a-334-5 (g) of the Regulations of
Connecticut State Agencies,[13] the insurance commis-
sioner expressly has authorized insurers to prorate or
reallocate loss. Accordingly, this court previously has
recognized that insurers may allocate primary responsi-
bility for coverage through the use of "other insurance"
clauses, such as that contained in the policy Farmers
issued to Nasser. See footnote 3 of this opinion. In
*Aetna Casualty & Surety Co.* v. *CNA Ins. Co.*, 221 Conn.
779, 781, 606 A.2d 990 (1992), we confronted overlap-
ping " 'other insurance' " provisions when the driver of
a vehicle involved in an accident was covered both by
the vehicle owner's policy and the policy of her sister
and brother-in-law, with whom the driver was residing
at the time. In that case, we concluded that " 'other
insurance' clauses are valid for the purpose of establish-
ing the order of coverage between insurers, as long as
their enforcement does not compromise coverage for
the insured." Id., 783. We noted, furthermore, that
"[p]ublic policy is not violated when 'other insurance'
clauses are used for the purpose of establishing the

---

[13] Section 38a-334-5 (g) of the Regulations of Connecticut State Agencies
provides: "Other insurance. The policy may provide for proration of loss
with other insurance or may provide that insurance for persons or organiza-
tions other than the named insured does not apply if such person or organiza-
tion has other insurance applicable to the loss with limits of liability not
less than those specified in subsection (a) of section 14-112 of the Gen-
eral Statutes."

order of payment between insurers. When the insured is afforded full indemnification for a loss, there is no public policy issue controlling how insurers divide coverage among themselves." Id., 785; see also *O'Brien* v. *United States Fidelity & Guaranty Co.*, 235 Conn. 837, 841, 669 A.2d 1221 (1996).

The fact that Hertz is a self-insurer does not affect its ability to establish the order of payment among other insurers; self-insurers are treated as the equivalent of commercial insurers under our statutory scheme. Pursuant to General Statutes § 38a-363 (b), " '[i]nsurer' or 'insurance company' includes a self-insurer . . . as provided by section 38a-371." See also *Conzo* v. *Aetna Ins. Co.*, 243 Conn. 677, 683, 705 A.2d 1020 (1998) ("upon electing to become a self-insurer, West Haven . . . became an insurer"). In addition, § 38a-371 (c) (3) requires a self-insurer to provide payment for all liabilities covered by residual liability insurance as well as other obligations imposed by that section "substantially equivalent to those afforded by a policy of insurance that would comply with this section." See footnote 10 of this opinion. This court has recognized that, "[t]hese statutory provisions explicitly reflect the legislature's intent to create a uniform scheme of insurance protection notwithstanding the source of that protection. That is, irrespective of whether the protection is provided by a program of commercial insurance or self-insurance, within the context of the mandatory insurance schemes, we can discern no distinction based upon the means of funding those benefits." *Hertz Corp.* v. *Federal Ins. Co.*, supra, 245 Conn. 378–79 n.4. Thus Hertz, as a self-insured corporation, has the same statutory obligations as a commercial insurance company, and likewise may bargain to reallocate primary responsibility for liability coverage of its rented vehicles.

Upon examination of the statutes, regulations, and case law of the state, it is clear that the essential concern

of our motor vehicle liability insurance scheme is guaranteeing minimum coverage for personal injury and property damage resulting from automobile accidents, not the assignment of that coverage to a particular party. Having concluded that Hertz is not statutorily mandated to provide primary coverage on its vehicles, we now turn to whether the trial court properly considered the Hertz rental agreement in its determination of the priority of coverage in the present case.

## II

Farmers contends that it was improper for the trial court to have considered the Hertz rental agreement in determining the priority of coverage for Nasser's rented vehicle. Farmers claims that, because Hertz was required to file its self-insurance policy with the insurance commissioner for approval, the subsequent rental agreement, which was not filed with the insurance commissioner, cannot be deemed to have modified the coverage in the self-insurance policy, and thus should not have been considered in the determination of the outcome in this case. Hertz contends that the rental agreement is the controlling document for the purposes of determining priority of coverage. We agree with Hertz.

We consider first whether, because Hertz was required to file its self-insurance policy with the insurance commissioner, the rental agreement, which had not been filed with the insurance commissioner, validly can control the liability coverage of Hertz' rental vehicles. Although we have not addressed this precise issue in the past, we confronted a similar situation in *Piersa* v. *Phoenix Ins. Co.*, 273 Conn. 519, 521, 871 A.2d 992 (2005), in which the "sole issue . . . [was] whether a self-insured municipal employer may reduce the limits

of its uninsured motorist coverage[14] by the amount of workers' compensation benefits paid, without having created a writing effectuating such a reduction." Although the facts in *Piersa* differ from those in the present case, the principles underlying our conclusion pertain.

In *Piersa*, a police officer brought an action against his employer, the city of Hartford (city), seeking compensation for injuries he sustained when an uninsured motor vehicle collided with his police cruiser. Id. Although the city, a self-insured entity, compensated the officer for his personal injuries, it refused to provide the officer with uninsured motorist benefits because it claimed that, pursuant to § 38a-334-6 (d) (1) (B) of the Regulations of Connecticut State Agencies,[15] the insurance coverage on the police vehicle was offset by the workers' compensation benefits received by the officer. Id., 522, 525–26. Prior to the accident in that case, the city had filed a letter with the insurance commissioner, pursuant to § 38a-371 (c),[16] stating that it intended to provide self-insurance for its automobile liability and specifying that it would provide the required uninsured motorist coverage minimum of $20,000 per person and $40,000 per occurrence. Id., 522. The letter did not invoke, however, any reduction in those limits permitted by statute or regulation, including the reduction

---

[14] We note that *Piersa* involved uninsured motorist coverage, which, although related to liability coverage, is not its equivalent and involves policy concerns not implicated by residual liability coverage.

[15] Section 38a-334-6 (d) (1) (B) of the Regulations of Connecticut State Agencies provides in relevant part: "The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been . . . paid or are payable under any workers' compensation law . . . ."

[16] Section 38a-371 (c) allows a municipality simply to file notice with the insurance commissioner that it intends to self-insure and does not require the municipality to provide proof of its undertaking or to subject its self-insurance coverage to approval of the commissioner.

that the city later sought to invoke by offsetting the officer's workers' compensation payment in that case. Id. Thus, neither the officer, the insurance commissioner, nor any other potential claimant would have had any notice that the city intended to offset its coverage in the amount of any workers' compensation benefits paid to a claimant. The city argued that, because § 38a-334-6 (d) (1) (B) of the regulations permitted it to reduce its uninsured motorist coverage in this manner, it was not required to create a written document specifying that it intended to invoke this permissive reduction. Id., 523, 527. We disagreed and concluded that "the language of the regulation must be interpreted so as to require a municipal self-insurer that wishes to impose permitted limits on its obligations as such to do so by a written document that appropriately provides for reduction of limits." Id., 527. We reasoned that this was the proper result because it was "consistent with the [city's] obligations as an insurer under § 38a-371 (c) and with [the] uniform legislative scheme [which does not differentiate between commercial and self-insurers] to require the [city] to create a written document specifying its selected reductions in limits, because a commercial insurer must specify those reductions in limits in its written insurance policy in order to take advantage of them. Similarly, it would be inconsistent with those obligations and that scheme to permit the [city] to take advantage of all of those limits by remaining silent with respect to them, because a commercial insurer would not be able to do so in that fashion." Id., 528.

At the outset, we note that the rules applying to the city as a self-insured municipality are not necessarily the same as those governing other, nonmunicipal self-insured entities. See General Statutes § 38a-371 (c). More importantly, in the present case Hertz *did* specify its coverage terms in a written document, namely the rental contract that was executed by Nasser. See foot-

note 2 of this opinion. Accordingly, applying our holding in *Piersa* to the facts in the present case, we conclude that the rental agreement validly modified the liability insurance coverage that Hertz was required to provide on the vehicle that Nasser rented. In *Piersa*, elaborating on the written documentation necessary to effect limitations on coverage, we emphasized that: "there is no particular form that a self-insured entity must use in order to take advantage of the permitted reductions in limits. The required written document may be part of its written notice to the commissioner of its election to be self-insured . . . . *Or* . . . it may be as part of a written document that the self-insured entity maintains in its files. Nor is it necessary for the document to repeat verbatim the language of the regulation that the defendant intends to adopt as limits on its coverage. . . . [The self-insured entity] could adopt those limits by appropriate language indicating incorporation by reference. *The purpose of the document is to require the self-insured entity to fulfill its obligation as insurer by providing a kind of rough equivalence to the obligation of a commercial insurer to limit its coverage by appropriate language in its policy of insurance. Any document that reasonably fulfills that purpose will suffice.*" (Emphasis added.) *Piersa* v. *Phoenix Ins. Co.*, supra, 273 Conn. 531. Applying this substantive standard to the rental contract, we conclude that Hertz properly specified the terms of Nasser's coverage in that document.

Moreover, unlike the defendant in *Piersa*, Hertz did not seek to reduce the dollar amount of liability protection it would supply under the prioritization provision, but rather it sought merely to clarify the order of coverage of overlapping policies. As we have discussed in part I of this opinion, Hertz, like any commercial insurer, was permitted to specify that its liability coverage would not be primary in the event that Nasser

declined, as he did, to purchase that coverage as part of his rental. Thus, in executing the rental contract, Nasser agreed that his personal automobile coverage provided by Farmers would be primary for the rented vehicle. To deny the enforcement of that provision, bargained for by the parties, would be against the standards according to which we evaluate contracts in this state. See *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 674, 791 A.2d 546 (2002) ("[t]he law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous"); *Hertz Corp.* v. *Federal Ins. Co.*, supra, 245 Conn. 381–82 ("The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." [Citation omitted; internal quotation marks omitted.]).

Although we agree with the trial court that the rental agreement properly may be considered as the controlling document in the present case, we briefly address Farmers' claim that we should nonetheless conclude that the prioritization provisions contained in the contract are unauthorized by regulation and are therefore invalid. Initially, we note that, for the reasons we have stated in part I of this opinion, we already have concluded that it is not inconsistent with the statutory and regulatory scheme for Hertz to provide secondary coverage on its rented vehicles.

Moreover, this court previously has addressed the valid manner by which insurers may limit uninsured motorist coverage according to permissive statutory and regulatory grants. In *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 591 A.2d 101 (1991),

we considered an insurer's attempt to limit its uninsured motorist coverage based on a specific regulation not at issue in the present case. We concluded that "[w]hen an insurer seeks to limit its liability for uninsured or underinsured motorist coverage based on [a] regulation . . . it may do so only to the extent that the regulation 'expressly authorizes.' . . . In order for a policy exclusion to be 'expressly authorized' by the statute, there must be substantial congruence between the statutory provision and the policy provision." (Citations omitted.) Id., 674. Thus, in determining the propriety of provisions in insurance policies purporting to limit coverage pursuant to applicable insurance regulations, we look for "substantial congruence" between the regulation and the policy provision at issue. See *Giglio* v. *American Economy Ins. Co.*, 278 Conn. 794, 804 n.9, 900 A.2d 27 (2006) ("[i]n order for a policy exclusion to be expressly authorized by [a] statute [or regulation], there must be substantial congruence between the statutory [or regulatory] provision and the policy provision" [internal quotation marks omitted]); see also *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 176, 713 A.2d 1269 (1998); *Lowrey* v. *Valley Forge Ins. Co.*, 224 Conn. 152, 156, 617 A.2d 454 (1992). In the present case, the language of the Hertz rental agreement is substantially congruent with the authorization in § 38a-334-5 (g) of the regulations allowing a policy to provide for secondary liability coverage as long as the minimum statutory coverage is afforded between all applicable policies. See footnote 13 of this opinion. Therefore, we conclude that the prioritization provision in the Hertz rental contract is valid and enforceable for determining liability coverage on the vehicle at issue.

Finally, we note that other jurisdictions considering this issue have concluded that rental agreements should be given their full effect in determining the priority of coverage. See, e.g., *Farm Bureau Mutual Ins. Co.* v.

*Alamo Rent A Car, Inc.*, 319 Ill. App. 3d 382, 389, 744 N.E.2d 300 (2000) ("Neither the language contained in the [v]ehicle [c]ode nor the public policy behind it, which is to protect the public, bars contract terms that purport to shift primary liability under insurance policies. Thus, we cannot ignore the laws and public policy of the state, which permit freedom of contracting between competent parties. . . . Because the parties may properly contract as to which insurer is responsible for primary coverage as long as statutory minimum requirements are met, we hold that, as a matter of law, the rental agreement . . . was valid and enforceable, shifting primary coverage to [the lessee's personal automobile insurer]." [Citation omitted.]); *U.S. Fidelity & Guaranty Co.* v. *Hanover Ins. Co.*, 417 Mass. 651, 655–57, 632 N.E.2d 402 (1994) (in conflict between excess clause in personal insurer's policy and " 'super-escape' " clause in rental contract that denied coverage "when other valid and collectible insurance, *either primary or excess*, [was] available," court concluded that "explicit and comprehensive" language of super-escape clause invoked excess coverage provided by personal insurer, making latter solely responsible for loss [emphasis in original]); *New Hampshire Indemnity Co.* v. *Budget Rent-A-Car Systems, Inc.*, 148 Wash. 2d 929, 933 n.1, 936, 64 P.3d 1239 (2003) (in similar dispute over rental car liability coverage, holding that "[r]ental car agreements are treated as stand-alone policies of vehicle insurance," that "parties may, consistent with the law, contract for automobile insurance coverage that becomes available only after all other insurance available, including excess insurance, is exhausted" and that vehicle operator's personal insurance was primary over rental company's secondary coverage). The guidance of our sister courts further persuades us of the prudence of our conclusion.

Finally, we note that according to the terms of its own policy; see footnote 3 of this opinion; Farmers has

agreed to provide primary coverage for its insured's liability when no other applicable liability coverage exists. Because Nasser expressly declined to purchase the liability insurance supplement from Hertz, there is no "other applicable liability insurance" to render the coverage provided by the Farmers policy secondary. Thus, Farmers must cover the loss in this case. Accord *Hertz Corp.* v. *Federal Ins. Co.*, supra, 245 Conn. 383 ("it is by virtue of [the insurer's] own policy language that its coverage is primary with respect to policies, such as that provided by Hertz, which are written specifically to provide excess liability coverage").

The judgment is affirmed.

In this opinion the other justices concurred.