LEANNA PUTMAN v. CHRISTOPHER B. KENNEDY
(AC 25220)

Flynn, C. J., and DiPentima and West, Js.

---

Argued May 21—officially released September 25, 2007

*Susan M. Phillips*, for the appellant (defendant).

*Susan Boyan*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The defendant, Christopher B. Kennedy, appeals from the judgment of the trial court granting the application of the plaintiff, Leanna Putman, for

a restraining order against the defendant for the protection of their minor son, pursuant to General Statutes § 46b-15.[1] The defendant claims that the court's order constituted an abuse of its discretion because there was no factual basis from which the court could have found that the defendant presented a continuous threat of present physical pain or physical injury to his son as required by the statute. We affirm the judgment of the trial court.

The record reflects the following facts and procedural history, which inform our disposition of the defendant's appeal. Following the dissolution of the parties' marriage in May, 2002, the court granted a motion filed by the plaintiff in February, 2003, for sole custody of the parties' three minor children, subject to reasonable visitation by the defendant. On December 31, 2003, at the conclusion of the children's visitation with the defendant, a dispute arose between the defendant and his son, resulting in a physical altercation between them.

On January 7, 2004, the plaintiff filed an application on behalf of herself, her boyfriend and her three minor

---

[1] General Statutes § 46b-15 provides in relevant part: "(a) Any family or household member . . . who has been subjected to a continuous threat of present physical pain or physical injury by another family or household member . . . may make an application to the Superior Court for relief under this section.

"(b) . . . Upon receipt of the application the court shall order that a hearing on the application be held not later than fourteen days from the date of the order. The court, in its discretion, may make such orders as it deems appropriate for the protection of the applicant and such dependent children or other persons as the court sees fit. Such order may include temporary child custody or visitation rights and such relief may include but is not limited to an order enjoining the respondent from (1) imposing any restraint upon the person or liberty of the applicant; (2) threatening, harassing, assaulting, molesting, sexually assaulting or attacking the applicant; or (3) entering the family dwelling or the dwelling of the applicant. If an applicant alleges an immediate and present physical danger to the applicant, the court may issue an ex parte order granting such relief as it deems appropriate. . . ."

children for an ex parte restraining order, pursuant to § 46b-15, on the basis of the December 31, 2003 events. The application also requested the suspension of the defendant's visitation rights. The next day, the court, *Scholl, J.*, granted the plaintiff's requested ex parte relief only as to the minor children and, in accordance with the dictates of § 45b-15, scheduled a hearing for January 20, 2004.[2] The court, *J. Kaplan, J.*, held three days of hearings from January 20 through 22, 2004.

The defendant and the son both testified that as the children were preparing to return to the plaintiff's house, a dispute arose between them over some objects that the son had packed to take to her house. The son took the bag of items to the car, despite the defendant's instruction not to do so. The defendant followed the son outside, reached past him to get the items out of the car and threw them onto the porch. The son hit the car window and took a step toward the porch to retrieve the items. At this point, the testimony of the defendant and the son diverged.

According to the defendant, he lowered the son to the ground in order to restrain him from hurting himself or the defendant and to "deescalate the situation." The defendant further testified that he considered his actions to be good parenting. The son could not recall exactly how he ended up on the ground, but he believed that the defendant had caused him to fall. The son further testified that while the defendant was pinning him down on the ground, he reached up and grabbed the defendant by the collar, ripping the defendant's shirt in the process. According to the son, the defendant also slapped him across the face, causing the younger daughter, who was ten years old at the time, to exit the

---

[2] On January 20, 2004, the defendant filed a motion to vacate the restraining order, claiming that no allegations had been made as to the plaintiff, her boyfriend or the two minor daughters.

car and shove the defendant, yelling at him to get off the son. The son further testified that as a result of the physical altercation with the defendant, he had a swollen ear and marks on his chest and neck area. In response to the defendant's question, the son claimed that he was not afraid of the defendant but also stated that for the time being, he did not want a relationship with him. At the conclusion of the hearing, the court found that the defendant physically had thrown the son to the ground and that he posed a continuous threat of present physical pain or physical injury to the son. Accordingly, the court continued the restraining order as to the son, including the suspension of his visitation, for six months and entered an order precluding the defendant from attending the son's school conferences during that time. The court reinstated the defendant's visitation with the daughters.

On January 30, 2004, the defendant filed a postjudgment motion to reargue. The court, *J. Kaplan, J.*, held a hearing on February 26, at the conclusion of which it denied the motion. On March 8, the defendant filed a motion for clarification postjudgment, which was denied on March 22. The defendant appealed on March 9 from the judgment modifying the restraining order.

While the defendant's appeal was pending, the restraining order expired by its own term. Accordingly, this court dismissed the appeal as moot.[3] After granting certification to appeal limited to the issue of mootness, our Supreme Court reversed that decision and remanded the case to this court for a decision on the merits.[4] See *Putman* v. *Kennedy*, 279 Conn. 162, 900

---

[3] On November 17, 2004, the parties appeared before this court to argue whether the appeal was rendered moot by the expiration of the order.

[4] Our Supreme Court reasoned that the adverse collateral consequences to a person subject to a restraining order warranted a decision even if the order had expired. *Putman* v. *Kennedy*, 279 Conn. 162, 175–76, 900 A.2d 1256 (2006).

A.2d 1256 (2006). On November 2, 2006, this court granted the defendant's motion to file supplemental briefs, which both parties filed.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 280 Conn. 764, 774, 911 A.2d 1077 (2007). Likewise, "[a] prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion." (Internal quotation marks omitted.) *Raph* v. *Vogeler*, 45 Conn. App. 56, 63, 695 A.2d 1066, cert. denied, 241 Conn. 920, 696 A.2d 342 (1997).

"In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, supra, 280 Conn. 775.

The defendant's claim also requires us to interpret § 46b-15. "Statutory construction is a question of law and, therefore, our review is plenary." (Internal quotation marks omitted.) *State* v. *Strich*, 99 Conn. App. 611, 633, 915 A.2d 891, cert. denied, 282 Conn. 907, 920 A.2d

310 (2007). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Pizzuto* v. *Commissioner of Mental Retardation*, 283 Conn. 257, 264–65, 927 A.2d 811 (2007); see *Gervais* v. *Gervais*, 91 Conn. App. 840, 849–50, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005).

General Statutes § 46b-15 (a) provides in relevant part: "Any family or household member . . . who has been subjected to a continuous threat of present physical pain or physical injury by another family or household member . . . may make an application to the Superior Court for relief under this section."

The plain meaning of the language in § 46b-15 requires a continuous threat of present physical pain or physical injury, which the court found existed in this case. The defendant challenges that conclusion, as well as its factual underpinnings. We conclude, however, that the court's findings are supported by the record,

and it did not abuse its discretion in issuing the restraining order.

The defendant first asserts that the court's finding that he had thrown his son to the ground was clearly erroneous because neither the defendant, nor his son, specifically testified as to that occurrence. The defendant's argument lacks merit.

The court had before it the son's testimony that he did not recall exactly how he ended up on the ground, but that he believed that the defendant had caused him to fall. The son further testified that he did recall that the defendant pinned him down and slapped him across the face. Also before the court were the defendant's alternating explanations that the altercation with his son was an accident or that he merely lowered his son to the ground for his son's protection. The court specifically chose not to credit the defendant's explanation and, instead, inferred from the defendant's testimony that the defendant had physically grabbed his son and thrown him to the ground. As the trier of fact, the court has a duty to draw reasonable inferences from the testimony and other evidence. *Levy, Miller, Maretz, LLC* v. *Vuoso*, 70 Conn. App. 124, 130, 797 A.2d 574 (2002). The trier also serves as the ultimate judge of the credibility of the witnesses and determines the weight to be accorded their testimony. See *State* v. *Hawthorne*, 176 Conn. 367, 371, 407 A.2d 1001 (1978). Accordingly, the court's finding that the defendant had thrown his son to the ground was not clearly erroneous.

The defendant further challenges the court's conclusion that he posed a continuous threat of physical pain or physical injury to his son. The defendant argues that the altercation was an isolated occurrence, for which the defendant was partially to blame, that there was no prior history of violence on the defendant's part and

that when asked at the hearing, his son stated that he was not afraid of the defendant.

The court reached its conclusion that the defendant posed a continuous threat of physical pain or physical injury to his son on the basis of its explicit finding that the defendant had committed a violent, aggressive act that resulted in physical injury to his son, and on the defendant's refusal to accept responsibility for that act, or to acknowledge that he should have handled the situation differently. On the contrary, the defendant blamed his son as the aggressor, testified that he believed that such force was necessary and that stopping a child from disobeying is good parenting, even if it involves physical force. Nothing in the language of § 46b-15 prevents the court from considering this evidence in its assessment of whether the defendant posed a continuous threat to his son, nor do we consider that evidence to be irrelevant on the issue.

Furthermore, neither a pattern of abuse nor the son's subjective fear of the defendant is a requirement for the finding of a continuous threat. Had the legislature intended these factors to be requirements, the statute would have stated so explicitly. See *Farmers Texas County Mutual* v. *Hertz Corp.*, 282 Conn. 535, 546–47, 923 A.2d 673 (2007) ("[i]t is well settled that we decline to engraft additional requirements onto clear statutory language" [internal quotation marks omitted]); see also *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 770 n.17, 900 A.2d 1 (2006) (noting that legislature knows how to enact legislation consistent with its intent). We further think that although both factors are appropriate for the court's consideration, neither can be dispositive of the question of whether a continuous threat exists. It would defy the prophylactic purpose of the statute to impose an absolute bar on relief until the person for whom protection was sought had suffered multiple physical abuses.

Similarly, we would not hold that absent a specific statement of fear on the part of a minor, the court is without authority to find that he was subject to a continuous threat of present physical pain or physical injury. We are very reluctant to restrict the necessarily broad discretion trial courts must retain in dealing with such sensitive and fact specific matters. Instead, like any other testimony, the son's statement regarding his fear should be weighed and assessed by the court. In doing so, the court was free to consider his age, his demeanor, the rest of his testimony and all of the other evidence. The court then could decide whether, in light of the totality of the evidence, there was a continuous threat of physical harm or physical injury.

After a careful review of the record, we conclude that the factual findings of the court are supported by the record and that it reasonably concluded that the defendant posed a continuous threat of present physical pain or physical injury to his minor son within the meaning of § 46b-15.

The judgment is affirmed.

In this opinion the other judges concurred.