JONI S. *v.* RICKY S.*
(AC 31279)

Bishop, Robinson and Schaller, Js.

Submitted on briefs May 25—officially released September 28, 2010

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Michael F. Romano* filed a brief for the appellant (defendant).

*Opinion*

ROBINSON, J. The defendant, Ricky S., appeals from the judgment of the trial court granting the motion filed by the plaintiff, Joni S., to extend a restraining order against him for violating General Statutes § 46b-15.[1] On appeal, the defendant's sole claim is that the court improperly found that the plaintiff was "subjected to a continuous threat of present physical pain or physical injury by [him] . . . ." General Statutes § 46b-15 (a). We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the defendant's appeal. The parties were married for nineteen years and have two daughters. On February 10, 2003, their marriage was dissolved. On October 30, 2006, the plaintiff filed an application for relief from abuse. On November 9, 2006, the application was granted for six months. On April 23 and October 22, 2007, and April 14, 2008, the court granted the plaintiff's motions to extend the restraining order for six months. On October 6, 2008, in response

---

[1] General Statutes § 46b-15 (a) provides in relevant part: "Any family or household member as defined in section 46b-38a who has been subjected to a continuous threat of present physical pain or physical injury by another family or household member . . . may make an application to the Superior Court for relief under this section." A "[f]amily or household member" is defined in relevant part as: "(A) spouses, former spouses . . . ." General Statutes § 46b-38a.

to another motion to extend the restraining order, the parties filed an agreement with the court that the restraining order would extend for six months.[2] On May 13 and June 24, 2009, the court again granted the plaintiff's motions to extend the restraining order.[3] This appeal followed.

On August 18, 2009, the defendant filed a motion for articulation, seeking articulation from the trial court of its decision to grant the June 24, 2009 motion to extend the restraining order against him. The court, in its articulation, stated that it based its decision, inter alia, on the credibility of the plaintiff, her fears of the defendant and the presentation and demeanor of the parties and their daughter during the hearing on the motion to extend the restraining order.

The defendant claims that there was not sufficient evidence before the court to make a factual finding pursuant to § 46b-15 that he was a "continuous threat of present physical pain or physical injury . . . ." General Statutes § 46b-15 (a). Specifically, the defendant argues that the record does not reflect a factual basis for a finding that there is currently a threat to the plaintiff because the evidence presented is too remote in time. We disagree.

We begin our analysis by setting forth the applicable standard of review. "[T]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases

[2] The parties agreed to alter the restraining order by reducing the distance that the defendant was required to stay from the plaintiff in certain situations and providing that the order could not be violated by an inadvertent meeting in a public place.

[3] We note that, although the restraining order appears to have expired, the present appeal is not moot. See *Putman* v. *Kennedy*, 279 Conn. 162, 164–65, 900 A.2d 1256 (2006) ("expiration of a domestic violence restraining order does not render an appeal from that order moot because it is reasonably possible that there will be significant collateral consequences for the person subject to the order").

unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . .

"In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Gail R.* v. *Bubbico*, 114 Conn. App. 43, 46–47, 968 A.2d 464 (2009).

"The plain meaning of the language in § 46b-15 requires a continuous threat of present physical pain or physical injury"; *Putman* v. *Kennedy*, 104 Conn. App. 26, 32, 932 A.2d 434 (2007), cert. denied, 285 Conn. 909, 940 A.2d 809 (2008); which, in the present case, the court found existed on the basis of the parties' testimony as well as the testimony of the parties' daughter. The plaintiff testified that she believed that the defendant would hurt her and then regret it. "Do I really think he wants to kill me? No. But I'm afraid in his mind that something is going to snap, and he's going to feel really bad afterward. This is my fear." Further, the plaintiff stated that the defendant mainly acted out when she was dating and that she had not dated recently for that reason.

The court also seemed particularly troubled by the fact that the plaintiff received flowers in February, 2009, at work and then later that night under the windshield wiper of her car. The plaintiff testified that when she and the defendant were first divorced he would "leave flowers on the hood of [her] car and put them underneath the windshield wiper and then all of a sudden

they [were] there under—you know, it's kind of like the same [modus operandi]." The plaintiff stated that she found the flowers late at night and expressed her concern that she and the defendant could have been in her driveway at the same time. Further, she testified that she was fearful because she believed that the defendant had undergone anger management therapy and lives close to her, and because she had seen him driving by her house repeatedly.

Additionally, the court noted that it found the testimony of the parties' daughter persuasive. She testified: "But I, also, know that one thing I absolutely want to say and I just have to get this out, is that love messes with people's heads. My father loves my mother more than anything in the world, but it clouds his judgment. And do I think he would hurt her? Absolutely not. Do I think that the way he loves her makes him get to a level that I don't think a person should ever get to in their own mind? Absolutely." She also testified that the defendant had stated that "if [the plaintiff] wasn't in our lives, [the witness' sister] would be with [them] and that would make everything easier," and, "If I can't be with [the plaintiff], why should anybody else be with her?"

Though the daughter's testimony is somewhat of a mixed message comprised of her personal feelings that the defendant does not mean what he says and that he would not hurt the plaintiff, it also clearly shows that the daughter believes that the defendant is so obsessed with the plaintiff that his judgment is impaired. Furthermore, when the parties' daughter was asked whether the defendant told her that he had killed seven people prior to meeting the plaintiff, the daughter testified that "it never [came] out and [was] said like that. It was said in a way where I was in [rehabilitation] at the time. He came to me and said we've all made mistakes in our past. I've hurt people in my past, and I've hurt their

families and that's what I feel bad for."[4] She also testified that the defendant has stalked the plaintiff, shown up when he was not supposed to, appeared in the plaintiff's driveway, and inquired and badgered her about the plaintiff's whereabouts. When asked under oath whether she recalled the last time that the defendant said that if he could not have the plaintiff, no one else could, she stated that she did not remember but that the defendant's obsessive behavior occurred when the plaintiff was dating and that the behavior "is always provoked by a situation." She testified that because the plaintiff was not dating at about the time of the hearing, the defendant did not feel the need to say that if he could not have the plaintiff, no one else could. She further stated that the defendant was jealous and that it "eats at him."

Once again, this court is compelled to state, what has become a tired refrain, "we do not retry the facts or evaluate the credibility of witnesses." (Internal quotation marks omitted.) *Noonan* v. *Noonan*, 122 Conn. App. 184, 197, 998 A.2d 231 (2010). In the present case, the trial court based its decision on its assessment of the credibility of the witnesses and found the plaintiff and the parties' daughter to be credible in their perceptions of the defendant. The record establishes that there was evidence to support a finding that the plaintiff was subjected to a continuous threat of present physical pain or physical injury. Accordingly, the trial court did not abuse its discretion in granting the plaintiff's motion to extend the restraining order against the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The court noted during the hearing that the restraining order application states that "[the defendant] claimed to have killed seven people prior to meeting [the plaintiff] twenty plus years ago. . . . He was graphic enough to state [that] he shot someone and bludgeoned the others with a baseball bat. He did say he felt bad for the families, and he told both of the children this . . . ."