******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

K. D. *v.* D. D.*
(AC 44842)

Bright, C. J., and Alexander and Lavine, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court granting the plaintiff's application for a civil restraining order pursuant to statute (§ 46b-15). At an evidentiary hearing, the plaintiff testified that there was a pending action for a dissolution of marriage between the parties and that she had been increasingly afraid of the defendant. The plaintiff testified that one evening, when she went to a restaurant with a group of people, she saw the defendant approach the hostess stand, he stared at her with a furrowed brow, locked eye contact with her, and that he seemed very agitated in his physical movements. After the defendant left the restaurant, he sent various text messages and emails to the plaintiff regarding the encounter. The trial court granted the application for a civil restraining order against the defendant, finding that the defendant's conduct created a pattern of threatening. On the defendant's appeal to this court, *held* that the trial court erred in failing to apply an objective standard to its determination when it issued the civil restraining order based on the pattern of threatening provision of § 46b-15 (a): the court viewed the evidence through the lens of the plaintiff's subjective reaction to the defendant's conduct, namely, her resulting fear, and stated that the plaintiff's testimony indicated a tone of hostility that she felt frightened her, and, although the reaction of an applicant can help provide context, subjective fear of an applicant is not a statutory requirement under § 46b-15, and, instead, what is required is the occurrence of conduct that constitutes a pattern of threatening; moreover, § 46b-15 does not contain any statutory language requiring a subjective-objective analysis, and there is nothing in the statutory language indicating that the legislature intended for courts to issue civil restraining orders under the pattern of threatening portion of § 46b-15 in situations other than where it is objectively reasonable to conclude, based on context, that the defendant had subjected the alleged victim to a pattern of threatening.

Argued April 6—officially released September 6, 2022

*Procedural History*

Application for a civil restraining order, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Edward R. Karazin, Jr.*, judge trial referee, granted the application and issued an order of protection, from which the defendant appealed to this court. *Reversed*; *order vacated.*

*Reuben S. Midler*, for the appellant (defendant).

*Opinion*

LAVINE, J. The defendant, D. D., appeals from the judgment of the trial court granting the application for a civil restraining order pursuant to General Statutes § 46b-15[1] filed by the plaintiff, K. D. On appeal, the defendant claims that the court improperly issued the civil restraining order because it applied an incorrect legal standard when it determined that he had subjected the plaintiff to a pattern of threatening. We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On June 29, 2021, the plaintiff filed an application for relief from abuse pursuant to § 46b-15, seeking a civil restraining order against the defendant. On that same day, the court issued an ex parte restraining order against the defendant, which was to expire July 6, 2021, and scheduled a hearing for July 6, 2021. At the July 6, 2021 evidentiary hearing, the self-represented plaintiff testified that there was a pending action for a dissolution of marriage between the parties and that she had been "increasingly afraid" of the defendant. She testified that on the evening of June 24, 2021, she went to a restaurant with a group of others, including friends of the defendant.[2] The plaintiff "felt [the defendant] behind [her] shoulder," and noticed that "the hairs on the back of [her] neck stood up." In her testimony, the plaintiff described her encounter with the defendant at the restaurant as follows: "I saw him approaching the hostess stand very physically tense. He stared at me with his furrowed brow twitching and locked eye contact for, what, I mean, twenty-five seconds and I was frozen. He seemed very agitated in his physical movements." She further testified that during the incident the defendant's shoulders were "very high" and that he was "leaning in aggressively with his hands clenched and tight and it seemed like he was breathing very heavy." She explained that the defendant then moved away from the hostess desk "in a wide circle behind [her] slowly." She stated that she was "in shock." The defendant testified that he went to the restaurant in response to an invitation from a friend, but when the plaintiff arrived he became "very uncomfortable" and did not "feel safe" and, therefore, walked from the hostess stand area to the lobby where he waited for an Uber.

Subsequent electronic communications from the defendant to the plaintiff were admitted as a full exhibit at the hearing (exhibit 1). The plaintiff testified that, after the defendant left the restaurant, he communicated with her electronically and she detailed that while she was still at the restaurant, she received a text message from the defendant at 8:33 p.m., stating: "Enjoy your date!"[3] She further testified that the defendant sent her a series of emails on the night of June 25 and in the early morning of June 26, 2021. The first email

stated: "You have 'fucked' all these 'dinner guests' while making me watch and abusing me. I will show you. Is that (unsafe) for those you have violated? Let me know when I should divulge your penchant for underage people." In a subsequent email, the defendant stated, "by underage, I meant legally permissible but young." In another email, the defendant explained that it was "unexpected" that the plaintiff would be at the restaurant and that, "upon seeing you, I left immediately. I hope to never accidentally run into you again." The final email in exhibit 1 concerned childcare issues.

In an oral ruling issued at the conclusion of the July 6, 2021 hearing, the court granted the plaintiff's application for a civil restraining order. The court stated that the plaintiff's testimony "indicated a tone of hostility which the plaintiff felt frightened her. The defendant, the husband, says no hostility, he left and took an Uber. He did indicate he left because he did not feel comfortable to be in the same space as she was. He did not let it end there, however, as he sent the messages in exhibit 1. The wife, the applicant, testified at the restaurant that he stared at her, made eye contact for twenty-five seconds, leaned in aggressively making eye contact, and furrowing his brow, and he was breathing heavily and he was fussing as he walked behind her. The court finds that the plaintiff['s] exhibit 1, substantiates the conditions at the restaurant. If all he wanted to do was leave, he could have done so, but he extended the evening with the [plaintiff] in exhibit 1. In exhibit 1 it says, [enjoy] your date and the use of the F word and the reference to others involved leads this court to the conclusion that the testimony of the wife, the applicant, is more credible. The court finds the conduct of the [defendant] creates a pattern of threatening."[4] The court issued a restraining order, which expired on July 5, 2022.[5] This appeal followed.[6]

"[T]he standard of review in family matters is well settled.[7] An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal. . . .

"[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statu-

tory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . General Statutes § 1-2z directs this court to first consider the text of the statute and its relationship to other statutes to determine its meaning. If, after such consideration, the meaning is plain and unambiguous and does not yield absurd or unworkable results, we shall not consider extratextual evidence of the meaning of the statute." (Citations omitted; footnote in original; internal quotation marks omitted.) *Princess Q. H.* v. *Robert H.*, 150 Conn. App. 105, 111–12, 89 A.3d 896 (2014). Consequently, our standard of review depends on the nature of the defendant's claim on appeal.

The defendant claims that the court erred in failing to apply an objective standard to its determination when it issued a civil restraining order based on the "pattern of threatening" provision in § 46b-15.[8] We agree.[9]

The defendant's claim requires us to determine the appropriate standard for assessing a pattern of threatening under § 46b-15 (a) and whether the trial court applied the required standard. Our standard of review is plenary. See *Putman* v. *Kennedy*, 104 Conn. App. 26, 31, 932 A.2d 434 (2007), cert. denied, 285 Conn. 909, 940 A.2d 809 (2008).

Section 46b-15 (a) provides in relevant part: "Any family or household member . . . who has been subjected to a continuous threat of present physical pain or physical injury, stalking or a pattern of threatening, including, but not limited to, a pattern of threatening, as described in section 53a-62, by another family or household member may make an application to the Superior Court for relief under this section. . . ." In § 46b-15 (a), the legislature incorporated, by reference, the definition of threatening in the second degree under General Statutes § 53a-62 of the Penal Code. Section 53a-62 provides in relevant part: "(a) A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury, (2) (A) such person threatens to commit any crime of violence with the intent to terrorize another person, or (B) such person threatens to commit such crime of violence in reckless disregard of the risk of causing such terror . . . ." In interpreting § 53a-62, this court has stated that "[t]rue threats are among the limited areas of speech which properly may be restricted without violating the protections of the first amendment." (Internal quotation marks omitted.) *State* v. *Carter*, 141 Conn. App. 377, 399, 61 A.3d 1103 (2013), aff'd, 317 Conn. 845, 120 A.3d 1229 (2015); see also *State* v. *Krijger*, 313 Conn. 434, 450, 97 A.3d 946 (2014).

The definition of "pattern of threatening" in § 46b-15 is not limited to, but, rather, is broader than the definition of threatening provided in § 53a-62. Section 46b-

15 does not define the ambit of this broader definition and, therefore, we look to commonly approved usage as expressed in dictionaries. See *Princess Q. H.* v. *Robert H.*, supra, 150 Conn. App. 113 ("[i]f a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary" (internal quotation marks omitted)). According to common usage, the term "threat" is defined in Merriam-Webster's Collegiate Dictionary (11th Ed. 2014), as "an expression of intention to inflict evil, injury, or damage,"; id., p. 1302; and is defined in Webster's Third New International Dictionary (1993), as "an expression of an intention to inflict evil, injury, or damage on another usu[ally] as retribution or punishment for something done or left undone . . . ." Id., p. 2382. These definitions are not particularly useful in determining the proper standard to be applied. Significantly, however, in § 46b-15 (a), the legislature specifically referenced the threatening in the second degree statute, pursuant to which threats are assessed using an objective standard. See, e.g., *State* v. *Taveras*, 342 Conn. 563, 572, 271 A.3d 123 (2022) (true threats governed by objective standard); see also *State* v. *Meadows*, 185 Conn. App. 287, 302–308, 197 A.3d 464 (2018) (rejecting argument of defendant, who was convicted of violating § 53a-62, that true threats doctrine requires defendant to possess subjective intent to threaten victim), aff'd sub nom. *State* v. *Cody M.*, 337 Conn. 92, 259 A.3d 576 (2020). By so doing, the legislature indicated an intent that an objective standard should be used when assessing patterns of threatening under § 46b-15.

In the present case, the court viewed the evidence through the lens of the plaintiff's subjective reaction to the defendant's conduct, namely, her resulting fear, and stated that the plaintiff's testimony "indicated a tone of hostility which the plaintiff felt frightened her." Although the reaction of an applicant can help provide context, subjective fear of an applicant is not a statutory requirement under § 46b-15. In interpreting a provision similar for our purposes, in *Putman* v. *Kennedy*, supra, 104 Conn. App. 34–35, this court determined, when interpreting the phrase "continuous threat" under § 46b-15, that, although it is appropriate for a trial court to consider an applicant's subjective fear, it is not statutorily required for a finding of a "continuous threat" under § 46b-15. This reasoning in *Putman* applies with equal weight to the provision of § 46b-15 at issue in the present case. It is not a requirement of § 46b-15 that an alleged threat causes an applicant any fear. What is required is the occurrence of conduct that constitutes a pattern of threatening. The legislature knows how to require a subjective-objective analysis, as it expressly did so when defining "fear" in the context of the issuance of protective orders for victims of stalking under General Statutes § 46b-16a. See *L. H.-S.* v. *N. B.*, 341 Conn. 483, 489–95, 267 A.3d 178 (2021) (fear under

§ 46b-16a requires subjective-objective analysis); see also *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 155, 12 A.3d 948 (2011) ("when the legislature chooses to act, it is presumed to know how to draft legislation consistent with its intent and to know of all other existing statutes and the effect that its action or nonaction will have upon any one of them" (internal quotation marks omitted)). Section 46b-15, unlike § 46b-16a, does not contain any statutory language requiring a subjective-objective analysis. There is nothing in the statutory language indicating that the legislature intended for courts to issue civil restraining orders under the pattern of threatening portion of § 46b-15 in situations other than where it is objectively reasonable to conclude, based on context, that the defendant had subjected the alleged victim to a pattern of threatening. We, therefore, conclude that, although a court may consider the subjective reaction of an alleged victim, the court must apply an objective standard. See *State* v. *Krijger*, supra, 313 Conn. 450 ("In the context of a threat of physical violence, [w]hether a particular statement may properly be considered to be a [true] threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault. . . . [A]lleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners." (Internal quotation marks omitted.)). Accordingly, we conclude that the court misconstrued the statute and applied an incorrect legal standard by limiting its analysis to a subjective standard rather than applying an objective standard in granting a restraining order on the basis that the defendant had subjected the plaintiff to a pattern of threatening under § 46b-15.

The judgment is reversed and the case is remanded with direction to vacate the civil restraining order.

In this opinion the other judges concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] We note that § 46b-15 has been amended by the legislature since the events underlying this appeal. See Public Acts 2021, No. 21-78; see also General Statutes (Supp. 2022) § 46b-15. Hereinafter, unless otherwise indicated, all references to § 46b-15 in this opinion are to the current revision of the statute.

[2] The defendant testified that he had been paying for the plaintiff to stay at the hotel where the restaurant was located, but that prior to June 24, 2021, he had been notified by the hotel that his hotel reservation for the plaintiff had been cancelled and that she no longer was staying there. The plaintiff testified that she cancelled the defendant's hotel reservation for her at the hotel and put the reservation under a different name.

[3] The plaintiff received the same text message twice.

[4] In its decision, the court inadvertently stated that the defendant texted "find" your date.

[5] Although the restraining order expired on July 5, 2022, the defendant's

appeal is not moot due to adverse collateral consequences. See *L. D.* v. *G. T.*, 210 Conn. App. 864, 869 n.4, 271 A.3d 674 (2022).

[6] The plaintiff did not file a brief in this appeal. We, therefore, ordered that this appeal shall be considered on the basis of the record, the defendant's brief and appendix, and oral argument.

[7] "Section 46b-15 is part of title 46b, 'Family Law,' and chapter 815a, 'Family Matters,' and, as such, is specifically included as a court proceeding in a family relations matter. See General Statutes § 46b-1 (5)." *Princess Q. H.* v. *Robert H.*, 150 Conn. App. 105, 111 n.3, 89 A.3d 896 (2014).

[8] The defendant also argues that the trial court lacked subject matter jurisdiction to entertain the plaintiff's application for a civil restraining order because the plaintiff's attached affidavit was not made under oath. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . [S]ubject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it . . . and a judgment rendered without subject matter jurisdiction is void." (Citation omitted; internal quotation marks omitted.) *Labissoniere* v. *Gaylord Hospital, Inc.*, 199 Conn. App. 265, 275–76, 235 A.3d 589, cert. denied, 335 Conn. 968, 240 A.3d 284 (2020), and cert. denied, 335 Conn. 968, 240 A.3d 285 (2020). Governor Ned Lamont's Executive Order 7Q, dated March 30, 2020, which was extended through June 30, 2021, by Executive Order 12B, and was in place at the time of the plaintiff's June 28, 2021 affidavit, allowed for remote notarization. There is no indication in the record that the plaintiff's affidavit was notarized remotely or otherwise. The restraining order specifically referenced statements made by the plaintiff in her unsworn affidavit, which affidavit was not admitted as an exhibit at the hearing, despite that, during the hearing, the court struck from the record portions of the plaintiff's argument that were based on statements she had made in her unsworn affidavit that were not also testified to at the hearing. Although it is axiomatic that allegations not in evidence cannot properly be relied upon to support a judgment, we need not address the issue further as it does not impact the subject matter jurisdiction of the trial court. The defendant has not directed us to any case law, nor are we aware of any, stating that the attachment of an unsworn affidavit to an application for a restraining order somehow deprives a court of subject matter jurisdiction over that application. We, therefore, reject the defendant's argument that the trial court lacked subject matter jurisdiction.

[9] The defendant raises additional arguments in support of his claim, which we do not address in light of our resolution of his principal argument.