******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# S. S. *v.* J. S.*
## (AC 47525)

Elgo, Cradle and Clark, Js.

*Syllabus*

The defendant appealed from the trial court's judgment granting the plaintiff's motion, filed pursuant to statute (§ 46b-15 (g)), to extend an order of civil protection issued against the defendant. The defendant claimed that the court abused its discretion in extending the order because there was insufficient evidence that the defendant posed a continuous threat of present physical pain or physical injury to the plaintiff. *Held*:

The trial court's decision to extend the order of civil protection was not an abuse of its discretion because the evidence was sufficient to show that the defendant posed a continuous threat of present physical pain or physical injury to the plaintiff, including evidence that the plaintiff resided in a home that was jointly owned by the parties, they were in the midst of a contested dissolution action, and there were criminal changes still pending against the defendant for an incident in which he assaulted the plaintiff.

Argued November 18, 2024—officially released February 11, 2025

*Procedural History*

Application for a civil protection order, brought to the Superior Court in the judicial district of New Haven, where the court, *Gould, J.*, issued an ex parte civil protection order; thereafter, the court, *Grossman, J.*, issued an order of civil protection in accordance with a stipulation entered into by the parties; subsequently, the court, *Hon. James G. Kenefick, Jr.*, judge trial referee, granted the plaintiff's motion to extend the order of civil protection, and the defendant appealed to this court. *Affirmed.*

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

*Remington E. Copertino*, certified legal intern, with whom were *Richard A. Rochlin* and *Elise Cousineau*, for the appellant (defendant).

*Opinion*

CLARK, J. The defendant, J. S., appeals from the judgment of the trial court granting the motion filed by the self-represented plaintiff, S. S., to extend a restraining order issued against him pursuant to General Statutes § 46b-15.[1] On appeal, the defendant claims that the court abused its discretion in extending the order because there was insufficient evidence that, at the time the plaintiff sought the extension, the defendant posed a continuous threat of present physical pain or physical injury to her.[2] We affirm the judgment of the court.

The following facts, as found by the trial court or as otherwise undisputed in the record, and procedural history are relevant to this appeal. On February 8, 2023, the plaintiff filed an ex parte application in New Haven Superior Court for relief from abuse against the defendant pursuant to § 46b-15 (application). At the time of

[1] General Statutes § 46b-15 provides in relevant part: "(a) Any family or household member . . . who is the victim of domestic violence, as defined in section 46b-1, by another family or household member may make an application to the Superior Court for relief under this section.

\* \* \*

"(g) No order of the court shall exceed one year, except that an order may be extended by the court upon motion of the applicant for such additional time as the court deems necessary. . . ."

General Statutes § 46b-1 provides in relevant part: "(b) As used in this title, 'domestic violence' means: (1) A continuous threat of present physical pain or physical injury against a family or household member . . . (2) stalking . . . of such family or household member; (3) a pattern of threatening . . . of such family or household member or a third party that intimidates such family or household member; or (4) coercive control of such family or household member, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty. . . ."

[2] The plaintiff did not file a brief with this court. We therefore consider the appeal solely on the basis of the defendant's brief, oral argument, and the record. See, e.g., *Kathrynne S.* v. *Swetz*, 191 Conn. App. 850, 852 n.2, 216 A.3d 858 (2019).

the application, the parties, who had been married for more than thirty years and who have three adult children, were engaged in a contested dissolution action in the Superior Court in Middletown. The parties previously had resided together in their marital home in Guilford, but, following the events alleged in the application, the defendant moved to Florida, where he has resided during the pendency of this case.

In her affidavit accompanying the application, the plaintiff averred the following under oath. The defendant put a recording device in the plaintiff's purse without her knowledge, which he used to record her while she was at work. On November 14, 2022, when the plaintiff arrived home from work, the defendant, who was drunk, confronted her with a recording he had taken of her, which he falsely believed captured audio of her having sex with a coworker in her cubicle. He ordered the plaintiff to sit down and then "back handed [the plaintiff] so hard that [she] flew off the chair [she] was sitting in." The plaintiff attempted to hide under a desk, but the defendant continued to hit her. She then went upstairs to use the bathroom, but the defendant followed her, "back handed [her] repeatedly" while she was sitting on the toilet, and then picked her up by the neck and held her against the wall. The defendant "ripped clumps of hair out of [the plaintiff's] head" and left bruises "all over [her] body." The next day, the plaintiff called out of work because she had been badly beaten and had "lost [her] voice from screaming in fear the day before."

The plaintiff further averred that, throughout their marriage, the defendant had engaged in acts of domestic violence, such as pushing her and pulling hair out of her head. In the past, the plaintiff's children had to "get into the middle of the [defendant] and [the plaintiff] in order to protect [her] from his violence." Two weeks before the November 14, 2022 incident, the defendant

drunkenly confronted the plaintiff in the bathroom and said: " '[H]ow about we just end it now. I will put a bullet in your head and a bullet in my head.' " The defendant is a retired Connecticut state trooper who had access to guns, and, following his retirement from the state police in 2014, "[h]is drinking and aggressive behavior became out of control." The defendant had previously exhibited jealous and controlling behaviors, including isolating the plaintiff from her family and demanding that the plaintiff call back any number on her phone that he did not recognize so that he could make sure that the number belonged to a woman.

On February 7, 2023, one day before the inception of this case, the defendant was arrested in connection with the events described in the application. He was charged in New Haven Superior Court with strangulation in the second degree in violation of General Statutes § 53a-64bb, assault in the third degree in violation of General Statutes § 53a-61, threatening in the second degree in violation of General Statutes § 53a-62, and disorderly conduct in violation of General Statutes § 53a-182. A criminal protective order was issued against him. The criminal case is still pending, and, at oral argument before this court in November, 2024, counsel for the defendant represented that the criminal protective order remains in effect.

On February 8, 2023, the same day the plaintiff filed her application, the court, *Gould*, *J.*, granted the application and issued an ex parte restraining order against the defendant for a period of one week. On February 15, 2023, the parties stipulated to the entry of a restraining order against the defendant for one year, with the exception that the order would not apply to any of the parties' pets. That same day, following a remote hearing[3]

---

[3] Proceedings before the trial court were held remotely so that the defendant could appear without having to travel to Connecticut from Florida.

at which all parties were present, the court, *Grossman, J.*, accepted the stipulation as fair and equitable under the circumstances and made it an order of the court. The restraining order required the defendant, inter alia, to "[s]urrender or transfer all firearms and ammunition"; not to "assault, threaten, abuse, harass, follow, interfere with, or stalk" the plaintiff; to "[s]tay 100 yards away from [the plaintiff]" and to stay away from her residence; and not to contact the plaintiff in any manner.[4] The defendant complied with the terms of this order as well as with the terms of the criminal protective order.

On January 30, 2024, the plaintiff moved for an extension of the restraining order. The defendant opposed this motion. The court, *Hon. James G. Kenefick, Jr.*, judge trial referee, held a remote hearing on the plaintiff's motion on February 14, 2024, at which all parties were present but only the plaintiff testified. In her testimony, the plaintiff stated that, for her "peace of mind," she wanted the restraining order to continue because the parties' dissolution litigation was ongoing and she "still [was] not comfortable with just letting this go." She added that "[i]t doesn't matter [that the defendant] lives in Florida right now; he could easily get on a plane or in a car and come here." She explained that the parties continued to jointly own the marital home and stated: "I'm not comfortable with [the restraining order] ending. Absolutely not. . . . I mean, if they could extend [the restraining order] longer than a year after this, I would appreciate that." She affirmed the truth of the statements that she made in the affidavit accompanying her original application.

---

[4] The criminal protective order is not part of the record. At the February 14, 2024 hearing, however—which we discuss subsequently in this opinion—the court consulted the protection order registry, located the criminal protective order, and summarized its terms as "no assaulting, threatening, et cetera, stay away from the home, no contact, he can return once to get his belongings, stay 100 yards away . . . ."

The court continued the matter to March 20, 2024—leaving the restraining order in effect until that date—in order to allow the defendant time to file a brief addressing the court's statutory authority to extend the order. The defendant filed his brief on March 7, 2024. On March 20, 2024, the court issued an order extending the restraining order for an additional year. The court found the plaintiff's testimony at the February 14, 2024 hearing to have been credible. The court further found that the allegations of abuse set forth in the affidavit accompanying the application were "very significant and serious"; that the defendant was arrested in connection with this abuse and was currently subject to a criminal protective order with no expiration date; that, although the defendant resided in Florida, the parties were engaged in contested dissolution litigation and continued to jointly own the marital home where the plaintiff resided; and that, notwithstanding the defendant's compliance with the restraining order and criminal protective order, the plaintiff "is still fearful of the [defendant] because of the significant abuse she suffered from him in the past." This appeal followed.[5]

The defendant claims that the court abused its discretion in granting the plaintiff's motion for an extension of the restraining order because the plaintiff failed to present sufficient evidence that he posed a continuous threat of present physical pain or injury to her.[6] In

[5] On March 27, 2024, one week after the restraining order was extended, the defendant notified the court overseeing the parties' dissolution action that the parties had settled the dissolution, which had been scheduled for trial starting on April 2, 2024. On April 2, 2024, two days before this appeal was filed, the dissolution court, *Sanchez-Figueroa*, *J.*, rendered a judgment of uncontested dissolution. Three months later, on July 2, 2024, the plaintiff filed a motion for contempt, which the dissolution court, *Nugent*, *J.*, marked off on October 2, 2024. The most recent docket entry in the parties' dissolution action is dated October 2, 2024.

[6] In support of his claim that this court, in reviewing the extension of a restraining order under § 46b-15 (g), should assess whether there is sufficient evidence that the party subject to the order poses a continuous threat of present physical pain or physical injury to the plaintiff, the defendant relies

particular, he claims that the plaintiff's testimony at the February 14, 2024 hearing established that she had only a "vague, unsupported and unspecified sense of discomfort" with allowing the restraining order to expire and that, because she did not bring a "singular specific allegation" of problematic behavior to the court's attention, she failed to set forth an adequate justification for an extension. We are not persuaded.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . .

on this court's decision in *Joni S.* v. *Ricky S.*, 124 Conn. App. 170, 3 A.3d 1061 (2010). In *Joni S.*, this court applied the "continuous threat" standard in an appeal from the trial court's extension of a restraining order and concluded that, because sufficient evidence established the existence of such a threat, the trial court had not erred in granting the extension. Id., 175. The court in *Joni S.* derived the "continuous threat" standard from the language of § 46b-15 (a), which, at the time, provided in relevant part: "Any family or household member . . . who has been subjected to a continuous threat of present physical pain or physical injury by another family or household member . . . may make an application to the Superior Court for relief under this section." General Statutes (Rev. to 2009) § 46b-15 (a); see also *Joni S.* v. *Ricky S.*, supra, 171 n.1, 173.

Since this court's decision in *Joni S.*, § 46b-15 has been amended several times. See, e.g., Public Acts 2021, No. 21-78, § 2. The revision of the statute that has been in effect throughout the present case provides in relevant part: "(a) Any family or household member . . . *who is the victim of domestic violence, as defined in section 46b-1*, by another family or household member may make an application to the Superior Court for relief under this section." (Emphasis added.) General Statutes § 46b-15 (a).

General Statutes § 46b-1 (b) defines " 'domestic violence' " to include "[a] continuous threat of present physical pain or physical injury," but also to encompass other behaviors, such as "stalking," "a pattern of threatening," and "coercive control . . . ." See footnote 1 of this opinion.

Because we conclude that the plaintiff in the present case presented sufficient evidence of a continuous threat of present physical pain or physical injury, we need not and do not consider whether sufficient evidence of any of the other behaviors enumerated in § 46b-1 (b), in the absence of sufficient evidence of a continuous threat of present physical pain or physical injury,

"In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Kyle S.* v. *Jayne K.*, 182 Conn. App. 353, 361–62, 190 A.3d 68 (2018). We are mindful that "trial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . as [t]he conclusions which we might reach, were we sitting as the trial court, are irrelevant." (Internal quotation marks omitted.) *R. H.* v. *M. S.*, 220 Conn. App. 212, 224–25, 297 A.3d 592 (2023).

The court found, and the defendant does not dispute, that, at the time of the hearing on the plaintiff's motion, the parties continued to jointly own the marital home where the plaintiff resided; they were in the midst of a contested dissolution action; and there were criminal charges still pending against the defendant, who remained subject to a criminal protective order. The court reasonably could have concluded from these facts that the defendant's attitude toward the plaintiff remained volatile and vulnerable to the emotional strain that matrimonial litigation can engender and that the defendant, had he decided to travel to Connecticut,

would justify the court, in its discretion, in extending a restraining order issued pursuant to § 46b-15.

could have gained access to the plaintiff more easily than if she lived in a residence of which she was the sole owner or tenant.[7] Moreover, the court properly considered the outstanding criminal protective order that had issued as a result of the defendant's alleged conduct in assessing whether he posed a continuous threat to the plaintiff. See *Rosemarie B.-F.* v. *Curtis P.*, 133 Conn. App. 472, 477, 38 A.3d 138 (2012) (issuance of criminal protective order in connection with plaintiff's domestic violence allegations manifested judicial finding that defendant had violent tendencies and had acted aggressively toward plaintiff). Lastly, the court reasonably could have considered these facts and conclusions to be particularly salient to its risk assessment in light of the defendant's history of abuse toward the plaintiff. The allegations in the plaintiff's affidavit accompanying her original application—the truth of which the plaintiff affirmed in testimony that the court found credible—were extremely serious. They described a history of assaultive and controlling behavior by the defendant that spanned more than three decades of marriage, culminating in a brutal act of physical violence that led to felony charges being brought against the defendant.

The defendant points to his compliance with the restraining order and his current residence in Florida as evidence that he no longer poses a threat of physical injury to the plaintiff.[8] These were certainly appropriate factors for the court to consider in rendering its decision, but they did not compel the court to allow the restraining order to expire. Nothing in the language of

---

[7] We note that, in her affidavit, the plaintiff alleged that nine days after the defendant moved to Florida, he returned to the marital home and "scream[ed] that he wanted [the plaintiff] and [her] son out of the house."

[8] At oral argument before this court, the defendant narrowed his position, arguing that his compliance with the restraining order, *standing alone*, should have barred the court from extending the order as a matter of law. We reject that argument for the reasons we set forth in this opinion.

§ 46b-15 expressly requires, as a precondition of extending a restraining order, that a defendant have violated the order or resided within a certain proximity of the plaintiff. See, e.g., *Reserve Realty, LLC* v. *Windemere Reserve, LLC*, 346 Conn. 391, 410, 291 A.3d 64 (2023) ("[i]t is not the role of this court to engraft additional requirements onto clear statutory language" (internal quotation marks omitted)); *Putman* v. *Kennedy*, 104 Conn. App. 26, 34, 932 A.2d 434 (2007) ("[N]either a pattern of abuse nor the [victim's] subjective fear of the defendant is a requirement for the finding of a continuous threat. Had the legislature intended these factors to be requirements, the statute would have stated so explicitly. . . . It would defy the prophylactic purpose of the statute to impose an absolute bar on relief until the person for whom protection was sought had suffered multiple physical abuses." (Citations omitted.)), cert. denied, 285 Conn. 909, 940 A.2d 809 (2008). To the contrary, § 46b-15 (g) affords the court broad discretion in determining whether to extend a restraining order; the statute provides that the court may do so "for such additional time as [it] deems necessary." General Statutes § 46b-15 (g); see, e.g., *Stein* v. *Hillebrand*, 240 Conn. 35, 41, 688 A.2d 1317 (1997) ("the statutory language authorizing security on such terms as the court may deem desirable underlines the legislature's intent to confer broad judicial discretion on [the court]" (internal quotation marks omitted)). The court properly considered the facts highlighted by the defendant but nonetheless concluded, in its discretion, that they did not outweigh other evidence tending to show that he posed a continuous threat to the plaintiff. It is not the function of this court to reweigh that evidence. See, e.g., *Downing* v. *Dragone*, 216 Conn. App. 306, 331–32, 285 A.3d 59 (2022), cert. denied, 346 Conn. 903, 287 A.3d 601 (2023).

Because the evidence was sufficient to show that the defendant posed a continuous threat of present physical

pain or physical injury, we cannot conclude that the court's decision to extend the restraining order by one additional year constituted an abuse of its discretion.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] On November 8, 2024, the defendant filed a notice of supplemental authority pursuant to Practice Book § 67-10, in which he cites this court's recent decision in *S. S.* v. *D. M.*, 228 Conn. App. 559, 324 A.3d 233 (2024), to illustrate "how the court heavily weighs specific behaviors when making the necessary factual findings to determine whether grounds exist for continuing a civil protective order" and for the proposition that "specificity and seriousness in pleading" are required in order to secure an extension of a restraining order. We are not persuaded that *S. S.* is apposite to the present case.

In *S. S.*, this court reversed the judgment of the trial court granting the plaintiff's application for an order of civil protection pursuant to General Statutes § 46b-16a on the basis of stalking. *S. S.* v. *D. M.*, supra, 228 Conn. App. 567–68. This court concluded that the trial court had abused its discretion by failing to make factual findings that there were reasonable grounds to believe that the defendant had stalked and would continue to stalk the plaintiff. Id., 567. The defendant in the present case, however, does not claim that the court failed to make the necessary factual findings to support the extension of the restraining order; instead, he argues that the evidence before the court was insufficient to justify the extension. These claims are distinct. Indeed, in *S. S.*, the defendant had made a separate claim that the evidence was insufficient to establish reasonable grounds to believe that he had stalked the plaintiff, and this court expressly declined to reach that claim. Id., 565 n.5. *S. S.* thus sheds little, if any, light on the appropriate resolution of this appeal.